**CAPE MOBILE HOME MART, INC., Respondent,**

v.

**Lonnie D. MOBLEY, Appellant.**

**Nos. 55845, 55906.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 7, 1989.

Larry H. Ferrell, Nancy L. Browne, Cape Girardeau, for appellant.

Michael Andrew Price, Cape Girardeau, for respondent.

CRIST, Judge.

Lonnie D. Mobley (employee) appeals from an order enforcing a noncompete agreement between employee and Cape Mobile Home Mart, Inc. (employer). The trial court enjoined employee from competing in the retail sales of mobile homes within thirty miles of employer's places of business for two years from the date of employee's termination of employment,

February 22, 1988. The trial court further enjoined employee from divulging any confidential information or trade secrets gained as a result of his employment with employer. We affirm.

Employer maintains and operates more than fifteen mobile home sales lots and locations within and outside the State of Missouri. One of employer's facilities at which it does business under the name of Dexter Mobile Home Sales, is located in Dexter, Missouri, and has been maintained and operated by employer since prior to April 24, 1987.

On April 24, 1987, employee was hired as a salesman by employer and was assigned to the Dexter Mobile Home Sales location. On that date, and as a part of the consideration for employment, employee signed a document entitled "Covenant not to Compete or Divulge Employer's Secrets." Employee had a chance to review and discuss the document before signing it. All employees were required to sign the covenant.

Shortly after he was hired, employee, who had no experience in the mobile home business, participated in a three-day orientation program given by employer to each of its new employees. The program consisted largely of an explanation of employer's operations, policies and procedures. Employee was advised he and other salesmen would have access to a great deal of confidential information regarding the business and such information should not be shared with competitors or anyone else. The purpose of giving this confidential information to the salesmen was to promote in-house competition and employee goodwill. In addition to the orientation program, employer provided sales training for employee and other employees on a quarterly basis through a consulting firm.

Employee's employment with employer lasted about ten months. Employee was considered by employer as a fair to below average salesman. His salary was based on a percentage of the sales he generated, but he was guaranteed a draw of $536 per month. In only three months out of the ten did employee earn more than the guaranteed $536.

During employee's employment with employer, employee received extensive confidential information about employer's business including:

A. Monthly and year-to-date sales and profit statistics and rankings for all of plaintiff's facilities and salesmen. Copies of these reports were given monthly to all salesmen, but no one outside the company had access to the reports;

B. Quarterly business and sales reports for the Dexter Mobile Homes location which include detailed income, expense and profit figures, inventory and pricing analyses, business projections and other critical information. Copies of these reports were given quarterly to all salesmen, but no one outside the company had access to the reports;

C. Companywide operations and procedures manual listing all of employer's policies and procedures, employee salary arrangements and benefits, inventory lines and limits on each sales location. Employee had access to the manual but it was not available to anyone outside the company. To prevent disclosure of the information in the manual to non-employees, company policy was enacted that any employee who lost a copy of the manual would be fined $1,000; and

D. Customer list for the Dexter Mobile Home facility in which every customer or potential customer who had visited the location was registered. The list names approximately 1200 past and/or prospective customers. The salesmen had access to this list, but it was not available to anyone outside the company.

Employer was the sole mobile home dealer in Dexter until two or three days prior to February 22, 1988, when Ferrell Mobile Homes opened a sales lot in Dexter within a block from employer's location. Ferrell Mobile Homes is the chief competitor of employer in the southeast Missouri area, and Ferrell Mobile Homes maintains and operates mobile homes sales lots located in several of the same towns and cities as employer.

On February 22, 1988, employee's employment was terminated either by mutual consent or by employee's voluntary act of quitting. A few days prior to February 22, 1988, employee talked with Ferrell Mobile Homes personnel about the possibility of his working for Ferrell Mobile Homes in Dexter. On February 22, 1988, employee again contacted the manager at Ferrell Mobile Homes and asked to be hired. Less than ten days after employee's employment terminated with employer, employee went to work as a salesman for Ferrell Mobile Homes. Shortly after employee went to work at Ferrell Mobile Homes in Dexter, Ferrell advertised employee as a salesman for Ferrell. Since February 22, 1988, employee has worked for Ferrell Mobile Homes at its Dexter facility as well as its Cape Girardeau facility.

Thereafter, employer filed suit for breach of contract, temporary restraining order, temporary injunction and permanent injunction. Ferrell Mobile Homes agreed to pay at least part of employee's legal fees. On June 29, 1988, a hearing was held and evidence was presented. On October 27, 1988, the trial court entered extensive findings of fact, conclusions of law and ordered employee to be restrained and enjoined from competing in the retail sale of mobile homes within thirty miles of employer's places of business for two years from the date of employee's termination.

Employee's first and second points on appeal assert the trial court erred in enforcing the noncompete agreement because the agreement was not reasonable where the employer did not demonstrate a protectable interest in any trade secrets or stock of customers.

Our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). We sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. The trial court, in its findings on the evidence, is given due regard for having the opportunity to judge the credibility of the witnesses. Rule 73.01(c)(2); *Mid-*

*States Paint & Chemical Co. v. Herr*, 746 S.W.2d 613, 615 (Mo.App.1988).

■ A restrictive covenant on the employee's right to compete must be reasonable as necessary to protect the employer's legitimate interest and reasonable as to time and geographical scope. *A.B. Chance Co. v. Schmidt*, 719 S.W.2d 854, 857[2–4] (Mo.App.1986). Such assessment must be made in consideration of the surrounding circumstances which include the subject matter, the purpose served, the situation of the parties, the limits of the restraint, and the specialization of the business venture. *Id.*

■ The purpose of a restrictive covenant is to protect the employer from unfair competition by a former employee. The employer has protectable interests in trade secrets and customer contacts. *Mid-States*, 746 S.W.2d at 617[4]. Trade secrets are defined as:

[a]ny formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.

*Id.* at 618[4]. Trade secrets may include a list of customers and a code for determining discounts, rebates or other concessions in a price list or catalogue. *Id.*

■ Testimony reveals retail mobile homes sales in southeast Missouri is a highly competitive business. Confidential company information can be used by other mobile home dealers to great advantage to compete unfairly against employer. Employer's purpose in requiring as a condition of employment a covenant not to compete is not to penalize employees. The covenant is for employer's protection to prevent the unauthorized dissemination and use of confidential information about employer's business.

The confidential business information employee possesses falls within the definition of trade secrets. This information, in its entirety, consists of the details of employer's operations and highlights the success or lack of success of the business operations and performance of employees

at the Dexter location and all of the other employer's locations. A competitor could use this information to determine its own risk of success or failure in competition with employer. The confidential information would enable the competitor to structure and operate its own facility to compete successfully against employer. This confidential information was not available to the public or to competitors. Employer made a significant effort to advise each of its employees of the confidential nature of the information and to admonish each of them to refrain from disseminating the information to the public and especially to competitors.

Additionally, employee admitted he took with him to Ferrell Mobile Homes a list of potential customers taken from the customers list registry maintained by employer. Since working at Ferrell Mobile Homes, employee has sold mobile homes to two of employer's potential customers who contacted employee while he was working for employer.

The list of customers or stock of customers, standing alone, may not have been sufficient for protection. *See Ibur & Associates Adjustment Co., Inc. v. Walsh,* 595 S.W.2d 33, 35[3] (Mo.App.1980). However, the customer list coupled with the employer's legitimate interest and the extensive confidential information employee received was sufficient for a protectable interest under these circumstances. The protectable trade secret is the compilation of all the confidential information employee received. *Osage Glass, Inc. v. Donovan,* 693 S.W.2d 71, 75[3–5] (Mo. banc 1985). Employee's first two points are denied.

█ Finally, employee asserts the geographic restraint imposed upon him is broader than necessary. The question of the reasonableness of the geographic limits sought to be imposed depends upon whether the employer possessed a stock of customers located co-extensively with those geographic limits. *Mid–States,* 746 S.W.2d at 617[3]; *Orchard Container Corp. v. Orchard,* 601 S.W.2d 299, 303[4, 5] (Mo. App.1980). The mobile home market in the Cape Girardeau area is highly competitive.

There are approximately twenty-five mobile home dealers in a one hundred-mile radius of Cape Girardeau. Considering the training and extensive confidential information employee received, and the list of customers employee obtained, the geographic restriction of a thirty-mile radius from employer's places of business cannot be said to be unreasonable. *Id.*

Further, many of those mobile home dealers who operate within a one hundred-mile radius of Cape Girardeau operate outside of the restricted thirty-mile radius. Employee also has experience in several different kinds of business unrelated to the mobile home industry. Thus, the geographic restriction cannot be said to be an unreasonable restraint on employee. *Continental Research Corp. v. Scholz,* 595 S.W.2d 396, 400[1–3] (Mo.App.1980). This point is denied.

Judgment affirmed.

SIMON, C.J., and HAMILTON, J., concur.