579 So.2d 127 (1991)
P. David HAPNEY, Appellant,
v.
CENTRAL GARAGE, INC., a Florida Corporation, D/B/a Gulfcoast Auto and Automotive Accessories and Ara Tampa, Appellee.
No. 90-00475.
District Court of Appeal of Florida, Second District.
February 1, 1991.
Rehearing Denied, Dissenting Opinion substituted May 15, 1991.
*128 Thomas T. Steele of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant.
Philip A. McLeod, St. Petersburg, for appellee.
PATTERSON, Judge.
This case presents the following question: whether judicial review of an employee's covenant not to compete is limited to determining the covenant's reasonableness in time and area without regard to whether the covenant reasonably relates to protecting a legitimate business interest of the employer? We answer in the negative and reverse.

FACTS
Appellee Gulfcoast is a Florida corporation engaged in the installation, repair and maintenance of auto air conditioners and related auto accessories. It has facilities in Tampa, St. Petersburg, Sarasota, and Ft. Myers, and draws customers from other surrounding areas.
Appellant Hapney is a Hillsborough County resident who, from 1981 to 1988, worked in various auto repair shops in the Tampa area where he learned to install and repair auto and truck air-conditioning systems. In 1988 he went to work for Gulfcoast.
As a condition of Hapney's employment, he entered into an "Employee Confidentiality Agreement and Covenant Not To Compete" which in pertinent part provides:
I further agree that for a period of three years following the termination of my employment I will not offer, as an agent, employee, owner, or distributor, similar products or services on behalf of a competitor of the Company on the west coast of Florida from Crystal River to Naples or inland 100 miles.
On July 14, 1989, Hapney voluntarily terminated his employment and began working for a direct competitor of Gulfcoast.
On August 1, 1989, Gulfcoast instituted an action to enforce the covenant not to compete against Hapney and his new employer. *129 After an evidentiary proceeding, the trial court entered a temporary injunction in favor of Gulfcoast. That order is the subject of this interlocutory appeal.
The issue with which we are concerned centers around the following findings of fact made by the trial judge:
[W]hile employed by Gulfcoast, (i) he [Hapney] received no significant training in the installation and repair of automobile air conditioning systems, beyond the knowledge and skill that he possessed when he began work with Gulfcoast, (ii) he received significant training in the installation of cruise controls and cellular telephones in automobiles, (iii) he had no significant contacts with Gulfcoast's customers and developed no significant relationships with Gulfcoast's customers, and (iv) he acquired no trade secrets or confidential business information of Gulfcoast.

HISTORICAL PERSPECTIVE
Under the common law of England, a contract restricting a person's right to pursue his trade or occupation was deemed void as against public policy. Medieval concepts that a person could not pursue a trade in which he had not been apprenticed made the rule necessary, because prohibiting a person from working under the supervision of one other than his original employer would leave the person in involuntary servitude or unable to provide for himself and his dependents. See Standard Newspapers, Inc. v. Woods, 110 So.2d 397 (Fla. 1959).
With the passage of time, the ancient rules of apprenticeship were abandoned, and it became recognized that in special circumstances limited restraints of competition were both necessary and proper to protect an employer's proprietary rights. Herbert Morris, Ltd. v. Saxelby, [1916] 1 A.C. 688; Bowler v. Lovegrove, [1921] 1 Ch. 642. Thus evolved the distinction between contracts prohibiting competition per se, which were prima facia invalid, Northwest Side Lumber Co. v. Layton, 239 Ill. App. 82 (App.Ct. 1925), and contracts protecting an employer from unfair competition from a former employee who had obtained trade secrets, or other confidential information, or special relationships with customers during the course of his employment. May v. Young, 125 Conn. 1, 2 A.2d 385 (1938); Super Maid Cook-Ware Corp. v. Hamil, 50 F.2d 830, 831 (5th Cir.), cert. denied, 284 U.S. 677, 52 S.Ct. 138, 76 L.Ed. 572 (1931) ("It is a settled principle of law that no man may, per se, contract with another that the other will not follow a calling by which he may make his livelihood."). These basic concepts are embraced in the law of our state. See Arnold v. Grossman, 75 So.2d 593 (Fla. 1954); Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32 (1934).
In 1953 the legislature enacted section 542.12, Florida Statutes (1953) (renumbered in 1980 as section 542.33), which acknowledged the common law principle that contracts in restraint of trade are void. The statute provides an exception which includes, in general terms, that an employee "may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer."[1]
The statute is silent on the issue of whether for such contracts to be valid they must relate to the protection of a proprietary interest of the employer. Thus, we must determine if such requirement is to be implied in the statute or whether the legislature has intended to authorize contracts *130 which prohibit competition per se. No Florida decision addresses this precise question.

OTHER JURISDICTIONS
Our review of the laws and decisions of our sister states which permit employee noncompetition agreements reveals an overwhelming majority requiring, at a minimum, that such contracts be reasonably related to the protection of a "legitimate business interest" or "protectible interest" of the employer. The rule, generally stated, is that an employer may not enforce a post-employment restriction on a former employee simply to eliminate competition per se; the employer must establish its legitimate business interest to be protected. See Bryceland v. Northey, 160 Ariz. 213, 772 P.2d 36 (Ct.App. 1989).[2]
The Supreme Court of Tennessee expressed the rule as follows:
[A]ny competition by a former employee may well injure the business of the employer. An employer, however, cannot by contract restrain ordinary competition. In order for an employer to be entitled to protection, there must be special facts present over and above ordinary competition. These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer.
Hasty v. Rent-A-Driver, Inc., 671 S.W.2d 471, 473 (Tenn. 1984) (citations omitted).
The rule is an expression of common sense which both protects the employer from unfair competition and recognizes the right of an individual, in a free and competitive society, to earn an honest living and better his status along the way. In a broader sense, all consumers benefit from the availability of goods and services, the quality and price of which are determined by fair competition, unfettered by artificial monopolistic practices.

FLORIDA LAW
We have no reason to doubt, and so determine, that the general rule stated above is an integral part of our law, which *131 is implied in section 542.33(2)(a), Florida Statutes (1989).
As we have noted, no Florida court has addressed the precise issue presented here. Several decisions, however, imply recognition of the rule. In Capelouto v. Orkin Exterminating Co., 183 So.2d 532, 534 (Fla.), appeal dismissed, 385 U.S. 11, 87 S.Ct. 78, 17 L.Ed.2d 10 (1966), our supreme court addressed the constitutionality of section 542.12 (the predecessor of 542.33), and in upholding the statute, observed:
[T]he fact that such contracts may be lawfully made and enforced under the statute does not ipso facto make every such contract enforceible [sic] as written. The restrictive provisions of such contracts will generally be enforced in such way as to protect the legitimate interests of the employer... .
The same court held in Akey v. Murphy, 238 So.2d 94, 96-97 (Fla. 1970), "that there was a `reasonable interest' to be protected by the restraining covenant." Later in Miller Mechanical, Inc. v. Ruth, 300 So.2d 11, 12 (Fla. 1974), the supreme court explained that section 542.12 "is designed to allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them."
The recent decisions of this court are of like tenor. In Flatley v. Forbes, 483 So.2d 483, 485 (Fla. 2d DCA 1986), Judge Frank, who joins in this opinion, observed in affirming the ruling of the trial court that the covenant in question was void and unenforceable, saying:
Flatley, however, had no tangible benefits stemming from the contract affecting only the Pasco County practice to protect by barring Forbes from practicing in Pinellas County... . The obvious and sole purpose of the covenant was to exclude Forbes from competing with Flatley in Pinellas County.
And in Marshall v. Gore, 506 So.2d 91, 92 (Fla. 2d DCA 1987), we limited the scope of an injunction to protect only the "legitimate business interests" of the employer.
Perhaps most fundamental to our determination is that "[t]he right to work, earn a living and acquire and possess property from the fruits of one's labor is an inalienable right." Lee v. Delmar, 66 So.2d 252, 255 (Fla. 1953); Art. I, § 2, Fla. Const. Implicit in this right is the opportunity to move freely within the labor force in the quest for advancement in position and economic productivity. Certainly the common law of this state recognized and jealously guarded this freedom in condemning and restricting contracts of the kind here considered.
Section 542.33(2)(a) is clearly in derogation of the common law and must be strictly construed. "Such statutes will not be interpreted to displace the common law further than is clearly necessary and will not be construed to make any alteration in the common law other than that which the statute specifies and plainly pronounces." Sarasota Beverage Co. v. Johnson, 551 So.2d 503, 511 (Fla. 2d DCA 1989) (Campbell, J., dissenting) (emphasis in original). A plain reading of section 542.33(2)(a) dispels any notion that the legislature intended to dispense with the bedrock requirement that covenants of this nature must relate to a legitimate business interest of the employer in order to restrict or impinge upon the right to pursue and earn a living guaranteed by our constitution.
Having determined that, pursuant to section 542.33(2)(a), the existence of a legitimate interest of the employer to be protected is a threshold condition to the validity of a covenant not to compete, we now direct our attention to what may constitute such an interest. Generally, three such interests are recognized: (1) trade secrets and confidential business lists, records, and information, (2) customer goodwill, and (3) to a limited degree, extraordinary or specialized training provided by the employer. See Moore Business Forms, Inc. v. Foppiano, 382 S.E.2d 499 (W. Va. 1989); Hasty v. Rent-A-Driver, Inc., 671 S.W.2d 471 (Tenn. 1984); Robbins v. Finlay, 645 P.2d 623 (Utah 1982). Clearly categories (1) and (2), by reason of our prior case law and the expression of the legislature in the 1990 amendment to section 542.33(2)(a), are interests which may *132 be protected. Ch. 90-216, § 1, Laws of Fla.[3] The third category is difficult to define with any degree of precision. Where recognized as a protectible interest, it is generally required that the employer provide more in training than that acquired by simply performing the tasks associated with a job. The resolution of this question is pertinent here because Hapney, although thoroughly schooled in the installation and repair of auto air conditioners upon his employment by Gulfcoast, did acquire the knowledge and experience necessary to install and repair cruise control units and cellular telephones while in the employ of Gulfcoast.
To constitute a protectible interest, however, the providing of training or education must be extraordinary. "Extraordinary" is that which goes beyond what is usual, regular, common, or customary in the industry in which the employee is employed. The rationale is that if an employer dedicates time and money to the extraordinary training and education of an employee, whereby the employee attains a unique skill or an enhanced degree of sophistication in an existing skill, then it is unfair to permit that employee to use those skills to the benefit of a competitor when the employee has contracted not to do so. The precise degree of training or education which rises to the level of a protectible interest will vary from industry to industry and is a factual determination to be made by the trial court. Needless to say, skills which may be acquired by following the directions in the box or learned by a person of ordinary education by reading a manual do not meet the test. Such is the case of Hapney, who extended his air-conditioning installation and repair skills to include cruise control units and cellular telephones. This is not to say that unique training in performing the simplest of tasks cannot be protected when the employer's methods fall within the category of trade secrets or other confidential information. No evidence in this record shifts Hapney's training to such a protected category.
Gulfcoast urges that we are compelled to affirm the trial court based on Capraro v. Lanier Business Products, Inc., 466 So.2d 212 (Fla. 1985), and our decision in Sarasota Beverage Co. We disagree. In Capraro, the court determined that "irreparable injury may be presumed upon proof of breach of a valid covenant not to compete," 466 So.2d at 213 (emphasis added). The distinction is readily apparent. Capraro deals with presumptions and burden of proof, not the validity of the underlying contract. Although Capraro contested the covenant's enforceability on grounds of estoppel, the issue of a protectible interest was not presented. See Capraro v. Lanier Business Products, Inc., 445 So.2d 719 (Fla. 4th DCA 1984), decision approved by Capraro v. Lanier Business Prods., Inc., 466 So.2d 212 (Fla. 1985). Likewise, Sarasota Beverage Co. relates solely to the court's authority to limit or reject the enforcement of a valid contract on equitable principles. In fact, the supreme *133 court's decision in Capraro enforces our determination that the court must look to the validity of the covenant in the first instance.
In his well-reasoned dissents in Keller v. Twenty-Four Collection, Inc., 419 So.2d 1048 (Fla. 1982), and Capraro, Justice Overton called upon the legislature "to modify or repeal section 542.12 in order that the courts may use proper equitable principles when injunctive relief is sought to enforce noncompetition agreements." Capraro, 466 So.2d at 214. In 1990 the legislature responded with chapter 90-216, section 1, Laws of Florida. We view the sweeping impact of this amendment to be threefold. First, the presumption of irreparable injury expressed in Capraro is strictly curtailed.[4] Second, a test of reasonableness is injected into the enforcement process because the amendment prohibits the enforcement of an unreasonable covenant. In Miller Mechanical, Inc. v. Ruth, 300 So.2d 11, 12 (Fla. 1974), our supreme court held:
In determining the reasonableness of such an agreement, the courts employ a balancing test to weigh the employer's interest in preventing the competition against the oppressive effect on the employee.
As this court held in Xerographics, Inc. v. Thomas, 537 So.2d 140 (Fla. 2d DCA 1988), this balancing test has been limited strictly to covenant provisions pertaining to duration and geographic area. We said:
The court may not refuse to give effect to a valid noncompetition agreement on the ground that enforcement would have an overly burdensome effect on employee. Twenty Four Collection, Inc. v. Keller, 389 So.2d 1062 (Fla. 3d DCA 1980). The only authority the court possesses over the terms of a noncompetition agreement is to determine reasonableness of the time and area limitations.
Xerographics, Inc., 537 So.2d at 143. And in Sarasota Beverage Co., we stated:
A court is not empowered to refuse to give effect to a covenant not to compete on the basis of finding that the enforcement of the contract's terms would produce an unjust result by causing an overly burdensome effect upon the employee.
551 So.2d at 507 (citations omitted). This restriction upon the court's powers of review flows from the terms of section 542.33(2)(a) that an "employee may agree with his employer, to refrain from carrying on or engaging in a similar business ... within a reasonably limited time and area." Judicial interpretation construed this language as an implied limit upon the court's authority because it granted no power to extend the test of reasonableness beyond that area specifically defined. This language remains unchanged in the statute as amended. Added, however, is the specific authority to deny injunctive relief as to an "unreasonable covenant." In this regard, we determine the intent of the legislature to be to authorize the courts to apply traditional equitable principle in cases of this nature to avoid unfair and unjust results, as urged by Justice Overton in his dissent in Keller.[5]
*134 Third, the legislature has specifically identified and segregated for special treatment covenants which protect trade secrets and customer lists and prohibit solicitation of existing customers, all of which are universally identified as legitimate business interests which may be protected. In such cases, the proof of such an interest to be protected provides the threshold for a presumption of irreparable harm on breach of the contract. All covenants not to compete, however, must be founded on an interest, determined by law, to be the proper subject of protection. That is, the proof of a protectible interest is the threshold to enforcement of such covenants; it is only the degree of proof thereafter which varies depending on the class of interest to be protected.
We address this 1990 amendment to section 542.33 because the trial court found that Hapney "received significant training in the installation of cruise controls and cellular telephones in autos" during his employment by Gulfcoast. Hapney concedes that these were skills which he did not possess when he began working for Gulfcoast. In view of our determination that such training must be extraordinary, it may appear remote that Hapney's training can rise to the level of a protectible interest. Nevertheless, we cannot totally foreclose Gulfcoast from pursuing the issue because it was not specifically addressed by the trial court. We therefore consider whether the trial court must apply section 542.33(2)(a), as amended, to this case on remand.
Remedial statutes, which do not create new or take away vested rights but only further existing rights, are to be applied retrospectively. Ziccardi v. Strother, 570 So.2d 1319 (Fla. 2d DCA 1990). Included in this category are statutes governing the burden of proof in civil actions. Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977); Stein v. Miller Indus. Inc., 564 So.2d 539 (Fla. 4th DCA 1990); see also, Dep't of Agric. & Consumer Serves. v. Bonanno, 568 So.2d 24 (Fla. 1990). The right created by section 542.12, and carried forward in section 542.33(2)(a), is to enter into a covenant not to compete in derogation of the common law. Procedurally the statute, from its inception, has provided that such contracts may be enforced by injunctive relief. Chapter 90-216 merely refines the relief available by categorizing the burden of proof in relation to the protectible interest at issue, and clarifies that the general principles of equity shall apply in this class of cases. The underlying substantive right is not affected. The statute is therefore remedial and may be applied retrospectively.

CONCLUSION
We hold (1) a covenant not to compete which prohibits competition per se violates public policy and is void; (2) a condition precedent to the validity of a covenant not to compete entered into by an agent, independent contractor or employee is the existence of a legitimate business interest of the employer to be protected; (3) it is the employer's burden to plead and prove the underlying protectible interest; (4) trade secrets, customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interests subject to protection; (5) other business interests, such as, but not limited to, extraordinary training or education, may constitute protectible interests depending upon the proof adduced; and (6) chapter 90-216, section 1, Laws of Florida, shall apply to and control all actions now pending or hereafter commenced.
As applied to this case, Gulfcoast has failed to plead or prove a legitimate business interest to be protected as the foundation of Hapney's covenant not to compete. The temporary injunction is therefore vacated with leave to Gulfcoast to serve amended pleadings if it so elects.
Reversed and remanded.
FRANK, J., concurs.
LEHAN, A.C.J., dissents with opinion.

*135 ON MOTION FOR REHEARING
PER CURIAM.
The motion for rehearing is denied except that the attached dissenting opinion is substituted for the prior dissenting opinion.
FRANK and PATTERSON, JJ., concur.
LEHAN, A.C.J., dissents.
LEHAN, Acting Chief Judge, dissenting with opinion.
I would grant the motion for rehearing but, since the motion is being denied by the majority, have substituted the attached dissenting opinion.
LEHAN, Acting Chief Judge, dissenting.
I respectfully dissent.
This appeal has become moot. The temporary injunction has expired under its terms. The order provides, "this Temporary Injunction Order shall be in effect no longer than one (1) year from January 2, 1990... ." I do not conclude that circumstances exist under which this court should decide a moot question. Compare Times Publishing Co. v. City of St. Petersburg, 558 So.2d 487, 491 (Fla. 2d DCA 1990); Times Publishing Co. v. Burke, 375 So.2d 297 (Fla. 2d DCA 1979).[1]
Even if this appeal is considered of the type which should be decided notwithstanding its mootness, as apparently is the conclusion of the majority, I would affirm. I do not conclude that the majority is empowered to do what the majority opinion does in its reversal, i.e., to add by judicial fiat to the contract in this case and to the pre-1990 version of section 542.33 the condition that in order to be valid an employee's noncompete contract must be shown to protect a "proprietary" or "legitimate" or "protectible" interest of the employer.
The controlling question is not whether that condition announced by the majority opinion should be adopted, i.e., whether, as seems to be the theme of the majority opinion, employees, even those subject to noncompete contracts, ought to have the right to work where they want to work absent a strong enough reason otherwise. That aspect is referred to by the majority opinion as "the right of an individual, in a free and competitive society, to earn an honest living and better his status along the way." Nor in my view is the controlling question phrased in the most accurate perspective as phrased by the majority opinion, i.e., "whether judicial review of an employee's covenant not to compete is limited to determining the covenant's reasonableness in time and area without regard to whether the covenant reasonably relates to protecting a legitimate business interest of the employer." Instead, the controlling question in the most accurate perspective is whether a panel of an appellate court is empowered to impose a condition upon the validity of a noncompete contract, like the condition so imposed by the majority opinion in this case, in light of prior controlling case law which does not impose that condition, the lack of any showing that the contract was not freely entered into by both parties, and the legislature's validation of noncompete contracts in section 542.33, Florida Statutes (1989).
My negative answer to that question has three reasons, any one of which calls for an affirmance: (a) a panel of this court is not empowered to impose the foregoing condition to the validity of noncompete contracts like the contract in this case in light of the en banc opinion of this court in Sarasota Beverage Co. v. Johnson, 551 So.2d 503 (Fla. 2d DCA 1989), as well as Xerographics, Inc. v. Thomas, 537 So.2d 140 (Fla. 2d DCA 1988) and Capraro v. Lanier Business Products, 466 So.2d 212 (Fla. 1985), *136 under which such contracts are valid without such a condition; (b) no court is empowered to rewrite a contract, which has been freely entered into by both parties, by adding thereto such a condition, as does in effect the majority opinion; and, most importantly, (c) no court is empowered to impose such a condition to the validity of noncompete contracts which are, as is the contract in this case, subject to the plain language of the legislature in section 542.33, Florida Statutes (1989), which not only does not provide for such a condition but validates such contracts without that condition. Those reasons are explained below.

(a) A Panel of This Court is not Empowered to Impose the Foregoing Condition to the Validity of Noncompete Contracts Like the Contract in This Case in Light of the En Banc Opinion of This Court in Sarasota Beverage Co. v. Johnson, 551 So.2d 503 (Fla. 2d DCA 1989), as Well as Xerographics, Inc. v. Thomas, 537 So.2d 140 (Fla. 2d DCA 1988) and Capraro v. Lanier Business Products, 466 So.2d 212 (Fla. 1985), Under Which Such Contracts Are Valid Without Such a Condition.

The opinions in Sarasota Beverage and Xerographics in my view unquestionably do not permit the imposition of such a condition. Yet the majority opinion in this case seems to take the expansive view that because the en banc Sarasota Beverage opinion, which follows Xerographics, does not literally preclude such a condition, a panel of this court is free to create it. The majority opinion, in creating that condition, is saying something of extreme significance which this court en banc in Sarasota Beverage did not say and which this court especially indicated in Xerographics that it would not say. Xerographics effectively disposed of the argument that for an employee's noncompetition contract to be enforceable, the contract must protect a particular kind of interest of the employer like an interest in trade secrets which the majority opinion in this case delineates as one of the types of protectible interests without which such a contract may not be valid. As Xerographics said,
The fact that a defendant may not have learned significant trade secrets which might be used against the former employer is not a basis on which to deny a plaintiff relief.
537 So.2d at 143.
To read such a condition into the Sarasota Beverage opinion stretches that opinion beyond what appears clearly as its intended meaning and in my view could not properly be done except by this court again acting en banc. As Sarasota Beverage says, quoting from Xerographics,
Employment contracts containing noncompetition agreements are valid and enforceable in Florida. § 542.33, Fla. Stat. (1985); Graphic Business Systems, Inc. v. Rogge, 418 So.2d 1084 (Fla. 2d DCA 1982). The remedy for breach of a noncompetition agreement is an injunction. Id. For purposes of a temporary injunction, irreparable injury is presumed where there is a violation of a noncompetition agreement. Id.; see also Capraro v. Lanier Business Products, 466 So.2d 212 (Fla. 1985). The court may not refuse to give effect to a valid noncompetition agreement on the ground that enforcement would have an overly burdensome effect on employee. Twenty Four Collection, Inc. v. Keller, 389 So.2d 1062 (Fla. 3d DCA 1980). The only authority the court possesses over the terms of a noncompetition agreement is to determine reasonableness of the time and area limitations. Id. The court is not empowered to rewrite a valid noncompetition agreement. Id. "When a contract is clear and unambiguous, the court cannot give it the meaning other than that expressed in it, and cannot rewrite the contract for the parties." Florida Pest Control & Chemical Co. v. Thomas, 520 So.2d 669 (Fla. 1st DCA 1988).
551 So.2d at 506.
In fact, the majority opinion effectively revokes the presumption of irreparable injury to the employer at a hearing on a temporary injunction, which is recognized in the above quotation as well as in Capraro, and puts the burden on the employer to *137 show injury. That is, the requirement that the employer prove that a particular kind of interest of the employer was protected by the contract is effectively a requirement that the employer prove injury from the breach of the contract. This will, I think, have the effect of turning the law in this area on its head. The single most important factor at a temporary injunction hearing, at which all the evidence is generally not in, is where the presumptions lie.
The precedential linchpin of the majority opinion is the conclusion that Capraro and Sarasota Beverage conditioned the enforceability of noncompete contracts on there being "valid" such contracts, such validity being dependent upon whether such contracts protect "proprietary" or "legitimate" or "protectible" interests of employers. However, that is to me strained reasoning at best. It actually is, in my view, judicial manipulation of the isolated word "valid" in those opinions which do not at all indicate what the majority opinion in this case arrives at. In fact, Sarasota Beverage specifically defines the word "valid" regarding a noncompete contract in this context to mean only "reasonable as to time and area." 551 So.2d at 509.
Similar manipulation is inherent, it seems to me, in the position of the majority opinion seeking to somehow avoid the impediment to the validity of the majority opinion represented by the sentence in Sarasota Beverage that
[a] court is not empowered to refuse to give effect to a covenant not to compete on the basis of finding that the enforcement of the contract's terms would produce an unjust result by causing an overly burdensome effect upon the employee.
Id. at 507. That sentence is diametrically contrary to the dissenting opinion in Sarasota Beverage, the argued for result of which the majority of this panel effectively adopts sub silentio. That sentence establishes that courts may not refuse to enforce a noncompete contract on the ground that it has an "overly burdensome effect upon the employee." The key word is "overly" which is, of course, a term denoting relativity (compared to what?) and in this context is measured by the comparative effects of such a covenant on an employee and an employer. Yet the majority opinion in this case does just what that sentence in the Sarasota Beverage majority opinion forbids by saying in effect that such a contract is overly burdensome on an employee because it restricts "the right of an individual ... to earn an honest living" unless it protects a "legitimate," "protectible," or "proprietary" interest of the employer.
The principal rationale used to support the majority opinion's effort to overcome the above-quoted Sarasota Beverage sentence relates to the 1990 amendment to section 542.33 and is not relevant to that opinion's interpretation of the pre-1990 statute on which this case turns. In fact, the necessity for the majority opinion to undertake to use as that rationale that 1990 amendment (which, for the reasons explained further below, cannot, as interpreted by the majority, be retroactively applied properly to the pre-1990 contract in this case) further supports my position that the statute before the amendment did not authorize what the majority opinion has done.

(b) No Court is Empowered to Rewrite a Contract, Which Has Been Freely Entered Into by Both Parties, by Adding Thereto Such a Condition, as Does the Majority Opinion.

There was no evidence in this case that the contract was not freely entered into by both parties. The prohibition against courts rewriting contracts, as does in effect the majority opinion by adding a condition not included in the contract by the parties, is, of course, well established and is reiterated in the foregoing Sarasota Beverage quotation from Xerographics.

(c) No Court Is Empowered to Impose Such a Condition to the Validity of Noncompete Contracts Which Are, as Is the Contract in This Case, Subject to the Plain Language of the Legislature in Section 542.33, Florida Statutes (1989), Which Not Only Does Not Provide for Such a Condition but Validates *138 Such Contracts Without That Condition.

The pre-1990 version of section 542.33, the version on which the outcome of this case turns, specifically validates in its subsection (1) noncompete contracts preventing employees from engaging in a similar business and does so without conditions except those in its subsection (2) that the employer must "continue[] to carry on a like business" and that such a contract's coverage may not exceed "a reasonably limited time and area." This refers to the 1989 version of 542.33 which is entitled "Contracts in restraint of trade valid" and which became effective October 1, 1988 and was therefore in effect when the contract in this case was entered into on October 18, 1988. Subsection (1) in pertinent part reads, "[E]ach contract by which any person is restrained from exercising a lawful profession, trade, or business of any kind, as provided by subsection[] (2) ... hereof, is to that extent valid... ." (The prior version, that to which the majority opinion refers, was entitled "Contracts in restraint of trade invalid; exceptions" but otherwise corresponded to the 1989 version.)
As indicated above, the pre-1990 statute contains no condition like that created by the majority opinion. The majority opinion purports to avoid that problem by using the absence of that condition in the statute to support its conclusion that whether such a condition may be judicially imposed was left open by the legislature. It does so by saying that "[t]he statute is silent on the issue of whether for such contracts to be valid they must relate to the protection of a proprietary interest of the employer." But to arrive at that conclusion requires an illogical leap in logic. In fact, as noted above, the statute is not silent in that regard because it specifically declares valid noncompete contracts not containing that condition. Yes, the statute does not contain that condition, but it is not silent as to whether a noncompete contract is valid without that condition. The fact that the legislature has validated a contract without a certain condition does not at all mean that a court is free to impose the condition. Quite to the contrary, the legislature has spoken, and the majority, it seems clear to me, has no authority to determine, as it has in effect determined, that the legislature did not mean what it specifically said.
Whether it was not wise to leave out from the wording of the statute the condition to the validity of noncompete contracts now created by the majority opinion  which seems to be in effect the position of the majority opinion  is not relevant. "A court's construction of statutes need not produce what the court might perceive to be a wise result in order to constitute a rational interpretation of legislative intent." Pfeiffer v. City of Tampa, 470 So.2d 10, 17 (Fla. 2d DCA 1985). See also Blount v. State, 581 So.2d 604 (Fla. 2d DCA 1991); Moretrench American Corp. v. Taylor Woodrow Construction Corp., 565 So.2d 861 (Fla. 2d DCA 1990); Dubrian v. Allstate Indemnity Co., 538 So.2d 151, 152 (Fla. 2d DCA 1989); Nationwide Property & Casualty Ins. Co. v. Marchesano, 482 So.2d 422, 426 n. 2 (Fla. 2d DCA 1985). As Moretrench says,
It is not the function of the courts to engraft an exception onto a clear and unambiguous statutory provision. "It is neither the function nor prerogative of the courts to speculate on constructions more or less reasonable, when the language itself conveys an unequivocal meaning." Heredia v. Allstate Insurance Co., 358 So.2d 1353, 1355 (Fla. 1978), as quoted in City of St. Petersburg v. Clark, 492 So.2d 685 (Fla. 2d DCA 1986). "A court's employment of perceived rationality and sensibleness as a guide to ascertaining legislative intent ... is in contrast to a situation where there is a clear manifestation of legislative intent which may not lead to what a court perceives to be a wise result." Nationwide Property & Casualty Insurance Co. v. Marchesano, 482 So.2d 422, 426 n. 2 (Fla. 2d DCA 1986).
565 So.2d at 862. Thus, for present purposes, it does not matter if either noncompete contracts inhibit what the majority opinion refers to as, "the right of an individual, in a free and competitive society, to *139 earn an honest living and better his status along the way" or, as that opinion says, other jurisdictions have imposed such a condition.[2]
The majority opinion, by adding such a condition to the pre-1990 statute, may be viewed as "judicial activism" of the kind which has received widespread, valid criticism. That opinion may be validly criticized by the many lawyers who drafted for employers the presumably at least hundreds of presently existing noncompete contracts prior to the 1990 amendment and by the employers who have relied upon the enforceability of those contracts.
Accordingly, the majority opinion, by effectively amending the pre-1990 version of section 542.33 by adding that condition, is vulnerable to being characterized as what is sometimes referred to as "judicial legislation," a term generally included within "judicial activism." See also Sarasota Beverage, 551 So.2d at 510 (Lehan, J., specially concurring) ("Why section 542.33(2)(a) should be effective, i.e., why it was enacted and serves a state interest, is a subject with profound ramifications which, in any event, is within the province of the legislature."). In my view that is a fatal flaw in the majority opinion which involves an aspect of the law of the utmost importance. The reasons are that (1) the majority opinion in that manner represents a clear violation of the separation of powers doctrine under which each of the separate branches of our form of government has its own domain, and (2) the separation of powers doctrine, according to many scholars with whom presumably all judges would agree, represents one of the most important features, if not the single most important feature, of our country's form of government.
The separation of powers doctrine, as a principle which is fundamental to the well-being of our constitutional system as it was designed to function, is far more important than righting a possible wrong perceived by the majority in this case to result to a relatively small group, even if there were a wrong. And it seems to me difficult to perceive of a wrong to such a group who have, as we must presume without evidence otherwise, freely contracted for that very result. Certainly the legislature for the 37-year duration of that statute did not appear to perceive a wrong.
There is of course nothing new in the point that it is the separation of powers doctrine which provides the checks and balances against excesses of power by a particular branch of government "to which the success of this country's form of government is to a large extent attributable." White v. Board of County Commissioners, 524 So.2d 428, 431 (Fla. 2d DCA 1988) (Lehan, J., dissenting), quashed, 537 So.2d 1376 (Fla. 1989). And it almost goes without saying that observance of that doctrine by the courts should reflect "the tenet that substantial cooperation and accommodation between the three branches of government is essential to the effective functioning of this country's form of government" and should recognize that "legislative power must also [as well as judicial power] be preserved in its proper sphere and scope." Id. at 437.
As a result of constitutional provisions distributing the powers of government among three departments, the legislative, executive and judicial, courts have no legislative authority, and should avoid judicial legislation, a usurpation of legislative powers, or an entry into the legislative field. Thus, it has been said that *140 whatever its opinion may be as to the wisdom of a statute or the necessity for further legislation, the duty of a court is to apply the law objectively as found, and not to revise it. Moreover, a court may not alter the law by construction because it appears outmoded. It is not within the province of a court, in the course of construction of a statute, to make or supervise legislation. A statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten, or given a construction of which its words are not susceptible, or which is repugnant to its terms. (Citations omitted.)
73 Am.Jur.2d Statutes § 197 (1974).
Certainly the continued viability of the separation of powers doctrine depends to a very large extent  if not almost entirely  upon the judicial branch not only policing actions of the legislative and executive branches in that regard but observing and following the doctrine itself. While the courts not infrequently strike down legislation as encroaching upon judicial power, see, e.g., White, 537 So.2d 1376, "the cooperation and accommodation between the branches must be a two-way street." White, 524 So.2d at 437 (Lehan, J., dissenting). In fact, as Corwin said, "[T]he legislative branch has a `natural primacy' in that it creates the legislation which the executive branch implements and the judicial branch interprets." Id. But to consider, as the majority opinion purports to do, the addition of its condition to the enforceability of employment contracts to be authorized as a proper judicial interpretation of section 542.33 is, I think, a judicial fiction that effectively rewrites the statute contrary to its plain terms.
That it is the province of the legislature to provide for the validity of noncompete contracts is clear from the legislature having occupied that area pursuant to section 542.33 and its predecessor for many years without dispute by the courts. This is effectively conceded by the majority opinion's recognition that to justify what it does, it had to somehow find the condition which it creates to be implied by the statute.
But to find a condition to the validity of noncompete contracts of the type required by the majority opinion to be implied by section 542.33, as the majority opinion does, is, it seems to me, no more than, again, a judicial fiction to justify the majority opinion's result. Nothing in the 1989 statute is cited by the majority opinion to support such an implication. And no support for such an implication appears to me in the cases cited in the majority opinion for that implication. Similarly, no support appears in the majority opinion, other than the new pronouncement in that opinion itself, for that opinion's statement that such a condition to the enforceability of noncompete contracts is "an integral part of our [Florida] law" or for its statement that "[a] plain reading of section 542.33(2)(a) dispels any notion that the legislature intended to dispense with the bedrock requirement that covenants of this nature must relate to a legitimate business interest of the employer in order to restrict or impinge upon the right to pursue and earn a living guaranteed by our constitution." My plain reading of the pre-1990 statute shows just the opposite. Also, there is no constitutional right to avoid compliance with a contract, whether for personal services or otherwise.
In fact, the majority opinion's interpretation of the pre-1990 version of section 542.33 brings about the kind of change to that statute apparently considered by the majority to be that which Justice Overton felt could be effected only by the legislature. As the majority opinion says in that regard, "Justice Overton called upon the legislature `to modify or repeal section 542.12 [now 542.33] in order that the courts may use proper equitable principles when injunctive relief is sought to enforce noncompetition agreements.'"
As indicated above, the 1990 amendment to section 542.33 relied upon by the majority opinion is irrelevant to this case which involves a pre-1990 contract. Even if the conclusion in the majority opinion is valid that that amendment authorized the new condition imposed by that opinion upon the validity of noncompete contracts, the *141 amendment could not retroactively apply to this case.
It is a well-established rule of construction that in the absence of clear legislative expression to the contrary, a law is presumed to operate prospectively. This rule applies with particular force to those instances where retrospective operation of the law would impair or destroy existing rights. In accordance with the rule applicable to original acts, it is presumed that provisions added by an amendment affecting existing rights are intended to operate prospectively also.
State v. Lavazzoli, 434 So.2d 321, 323 (Fla. 1983) (citations omitted). Only by erroneously interpreting the pre-1990 version of the statute to somehow contain the foregoing condition does the majority opinion in this case arrive at its conclusion that the 1990 amendment was merely remedial and thus retroactively applicable.
Thus, contrary to the position of the majority opinion, if the 1990 amendment does authorize the new condition, that amendment effected a substantive change to the law. It did more than simply effect a procedural change in (or, in the words of the majority opinion, "categorize") the burden of proof concerning injury to the employer. Prior to the majority opinion no proof of such injury was required at a temporary injunction hearing. The presumption of injury from the violation of contract disposed of any need for proof of injury.
Again, under the case law applicable to noncompete contracts entered into prior to the 1990 amendment there was a presumption of irreparable injury to the employer. As Judge Parker's majority opinion in Sarasota Beverage says, "Capraro ... held that irreparable injury must be neither alleged nor proved for entitlement to an injunction in a covenant-not-to-compete case." 551 So.2d at 508-09. See also Sarasota Beverage, 551 So.2d at 509-10 (Altenbernd, J., specially concurring). Since there was in effect, therefore, no burden of proof on the employer to show injury under the pre-1990 statute, it seems clear that the condition now imposed by the majority opinion effectively requiring the employer to prove injury does more than simply "categorize" the burden of proof. The imposition of that condition creates a new element of proof for employers which cannot properly be retroactively required because it impairs the enforceability of rights under pre-1990 contracts. See Lavazzoli.
That presumption of irreparable injury was the subject of the certified question in the en banc Sarasota Beverage opinion which was evidently not answered by the Florida Supreme Court. In light of the majority opinion in this case, there is now even stronger reason to certify that question here and no valid basis in my view for not doing so except that the conflict of the majority opinion with Capraro, not to mention Sarasota Beverage and Xerographics, should already provide the Florida Supreme Court with jurisdiction over this case.
NOTES
[1] 542.12 Contracts in restraint of trade invalid; exceptions 

... .
(2) One who sells the good will of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the good will from him, and so long as such employer continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction, be enforced by injunction.
[2] See also Sheffield v. Stoudenmire, 553 So.2d 125 (Ala. 1989); Amex Distributing Co. v. Mascari, 150 Ariz. 510, 724 P.2d 596 (Ct.App. 1986); Evans Laboratories, Inc. v. Melder, 262 Ark. 868, 562 S.W.2d 62 (1978); Mgmt. Recruiters of Boulder, Inc. v. Miller, 762 P.2d 763 (Colo. App. 1988); New Haven Tobacco Co. v. Perrelli, 18 Conn. App. 531, 559 A.2d 715 (App.Ct.), cert. denied, 564 A.2d 1071 (1989); Ellis v. James V. Hurson Assocs., 565 A.2d 615 (D.C.App. 1989); Beckman v. Cox Broadcasting Corp., 250 Ga. 127, 296 S.E.2d 566 (1982); Technicolor, Inc. v. Traeger, 57 Haw. 113, 551 P.2d 163 (1976); Marshall v. Covington, 81 Idaho 199, 339 P.2d 504 (1959); Retina Servs. Ltd. v. Garoon, 182 Ill. App.3d 851, 131 Ill.Dec. 276, 538 N.E.2d 651, cert. denied, 127 Ill.2d 640, 136 Ill.Dec. 606, 545 N.E.2d 130 (1989); Harvest Ins. Agency v. Inter-Ocean Ins. Co., 492 N.E.2d 686 (Ind. 1986); Iowa Glass Depot, Inc. v. Jindrich, 338 N.W.2d 376 (Iowa 1983); Puritan-Bennett Corp. v. Richter, 235 Kan. 251, 679 P.2d 206 (1984); Central Adjustment Bureau, Inc. v. Ingram Assoc., Inc., 622 S.W.2d 681 (Ky.App. 1981); Chapman & Drake v. Harrington, 545 A.2d 645 (Me. 1988); Holloway v. Faw, Casson & Co., 78 Md. App. 205, 552 A.2d 1311 (1989), aff'd in part, rev'd in part, 319 Md. 324, 572 A.2d 510 (1990); Kroeger v. Stop & Shop Cos. Inc., 13 Mass. App. 310, 432 N.E.2d 566, rev. denied, 386 Mass. 1102, 440 N.E.2d 1175 (1982); Follmer, Rudzewicz & Co., P.C. v. Kosco, 420 Mich. 394, 362 N.W.2d 676 (Mich. 1984); Webb Pub. Co. v. Fosshage, 426 N.W.2d 445 (Minn.App. 1988); Thames v. Davis & Goulet Ins., Inc., 420 So.2d 1041 (Miss. 1982); Cape Mobile Home Mart, Inc. v. Mobley, 780 S.W.2d 116 (Mo. App. 1989); Polly v. Ray D. Hilderman & Co., 225 Neb. 662, 407 N.W.2d 751 (1987); Ellis v. McDaniel, 95 Nev. 455, 596 P.2d 222 (1979); Smith, Batchelder & Rugg v. Foster, 119 N.H. 679, 406 A.2d 1310 (1979); Ingersoll-Rand Co. v. Ciavatta, 110 N.J. 609, 542 A.2d 879 (1988); The Listworks Corp. v. LCS Indus., Inc., 155 A.D.2d 305, 547 N.Y.S.2d 277 (1989); United Laboratories, Inc. v. Kuykendall, 322 N.C. 643, 370 S.E.2d 375 (1988); Levine v. Beckman, 48 Ohio App.3d 24, 548 N.E.2d 267 (1988); Farmers Ins. Exchange v. Fraley, 80 Or. App. 117, 720 P.2d 770 (1986); Blair Design & Const. Co. v. Kalimon, 366 Pa.Super. 194, 530 A.2d 1357 (1987); Rental Uniform Serv. of Florence, Inc. v. Dudley, 278 S.C. 674, 301 S.E.2d 142 (1983); Hill v. Mobile Auto Trim, Inc., 725 S.W.2d 168 (Tex. 1987) (superseded by statute as recognized in DeSantis v. Wackenhut Corp., 793 S.W.2d 670 (Tex. 1990)); Fine Foods, Inc. v. Dahlin, 147 Vt. 599, 523 A.2d 1228 (1986); Paramount Termite Control Co. v. Rector, 238 Va. 171, 380 S.E.2d 922 (1989); Gant v. Hygeia Facilities Found., Inc., 384 S.E.2d 842 (W. Va. 1989); Rollins Burdick Hunter of Wis. v. Hamilton, 101 Wis.2d 460, 304 N.W.2d 752 (1981); Tench v. Weaver, 374 P.2d 27 (Wyo. 1962).
[3] Section 1. Paragraph (a) of subsection (2) of section 542.33, Florida Statutes, is amended to read:

542.33 Contracts in restraint of trade valid
(2)(a) One who sells the goodwill of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent, independent contractor, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the goodwill from him, and so long as such employer, continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction, be enforced by injunction. However, the court shall not enter an injunction contrary to the public health, safety, or welfare or in any case where the injunction enforces an unreasonable covenant not to compete or where there is no showing of irreparable injury. However, use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined. In the event the seller of the goodwill of a business, or a shareholder selling or otherwise disposing of all his shares in a corporation breaches an agreement to refrain from carrying on or engaging in a similar business, irreparable injury shall be presumed.
[4] B. Effect of Proposed Changes:

The bill would prohibit a court from entering an injunction when the injunction would be contrary to the public health, safety or welfare, when the injunction enforces an unreasonable covenant to not compete or when there is no showing of an irreparable injury. This would overturn the decision in Caparo [sic] v. Lanier Business Products, Inc., Supra, and require the party seeking injunctive relief to plead and prove irreparable injury.
The bill would continue to allow the presumption of irreparable injury in connection with the use of trade secrets, customer lists, or direct solicitation of existing customers. Such injury would also continue to be presumed in connection with the sale of the goodwill of a business or the sale of all of a shareholder's stock in a corporation.
Staff of Fla.S.Comm. on Judiciary-Civ., CS for SB 2642 (1990) Staff Analysis 2 (May 17, 1990) (on file with committee) [hereinafter Judiciary-Civ. Comm. CS for SB 2642 Staff Analysis].
[5] addition, although courts currently examine covenants for the purpose of assessing their reasonableness, the addition of language stating that the court shall not enter an injunction which enforces an unreasonable covenant could result in the court's reexamination of whether the covenant is "burdensome", See, Xerographics, Inc. v. Thomas, 537 So.2d 140, 143 (2d DCA Fla. 1988).
Judiciary-Civ. Comm. CS for SB 2642 Staff Analysis 3 (parenthetical omitted).
[1] The trial court also reduced the duration of the covenant to one year from the three-year period contained in the contract, and there has been no appeal in that regard. Therefore, not only has the temporary injunction expired and the provision in the majority opinion vacating the temporary injunction has no practical effect on the conduct of the parties under the covenant but also the provision in the majority opinion allowing amended pleadings has no such effect.
[2] A brief review of the cases from other jurisdictions indicates that some of those jurisdictions apparently do not have statutes corresponding to section 542.33 and that in those which do have statutes of varying degrees of similarity, the case law may be interpreted as something of a morass. In any event, Florida law as a whole  legislative and judicial  has never shown the propensities in the area of labor-management which are thought to exist in some other states, e.g., Michigan with which Muller v. Stromberg Carlson Corp., 427 So.2d 266 (Fla. 2d DCA 1983) expresses disagreement. Just as in Muller, "An employee's entitlement to a particular term of employment or to particular salary levels on the basis of criteria more subject to misunderstanding and dispute than definite terms in an employment contract is not ... the province of a court of law," id. at 268, so also, a fortiori, it is not the province of a court to relieve an employee of his obligation under a noncompete contract.