**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,**

v.

**Thomas HAGERTY, Defendant.**

**No. 92–8642–CIV.**

United States District Court,
S.D. Florida.

Oct. 27, 1992.

Ronald B. Ravikoff, Humberto J. Pena, Zuckerman, Spaeder, Taylor & Evans, Miami, FL, Thomas T. Loder, Rubin & Associates, Paoli, PA, for plaintiff.

Curtis Carlson, Carlson, Bales & Schwed, P.A., Miami, FL, for defendant.

## ORDER GRANTING PRELIMINARY INJUNCTION

NESBITT, District Judge.

This cause comes to the Court upon the Plaintiff's Motion for a Preliminary Injunction filed October 5, 1992. The Court held a hearing on October 16, 1992 where both parties came and were heard. After careful consideration, it is ORDERED and ADJUDGED as follows: [1]

In this diversity action Plaintiff alleges that Defendant breached an Account Executive Training Agreement ("Account Agreement") between the parties. This agreement provides in part that:

1. All records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch.

2. In the event of termination of my services with Merrill Lynch for any reason, I will (i) not solicit, for a period of one year from the date of termination of my employment, any of the clients or prospective clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any office of Merrill

---

1. On October 6, 1992, the Court issued a Temporary Restraining Order and scheduled an October 16th hearing on the Plaintiff's Motion for a Preliminary Injunction. The Court also directed the Defendant to file his opposing memorandum by October 15th. On October 16th, the Defendant filed an untimely thirty-five page memorandum in violation of Rule 10(C) of the Rules of the United States District Court for the Southern District of Florida ("Local Rule(s)"). The Court struck Defendant's memorandum, but provided the Defendant an opportunity to file an amended memorandum before the hearing. Defendant subsequently filed a memorandum which complied with the Local Rules. At the October 16th hearing, the Court denied Defendant's motion to resubmit its original memorandum.

Subsequently, the Defendant sent an ex parte letter to the Court seeking to substitute a revised memorandum because the memorandum submitted prior to the hearing "contain[ed] many errors and *omitted important arguments.*" This letter and the attached memorandum violate Local Rule 10(M) and Rule 4–3.5(b)(2) of the Rules Regulating The Florida Bar. For these reasons, and because the memorandum admittedly contained arguments the Plaintiff had no opportunity to address, the memorandum is stricken and will not be considered.

Lynch in which I was employed, and who reside within the same state as the Merrill Lynch office or offices in which I was employed, and (ii) return any original records and purge or destroy any computerized, duplicated or copied records referred to in paragraph (1) which have been removed from the premises of Merrill Lynch in any form.

Defendant also agreed to abide by Plaintiff's "Compliance Outline" which provides that

Client's accounts shall be handled in a highly confidential manner. You should not discuss the affairs of any client with anyone else.

\* \* \* \* \* \*

No information or records concerning the affairs of Merrill Lynch and/or its clients may be released except to persons legally entitled to receive such. This includes confidential information requested during routine regulatory visits.

On September 1, 1992, the Plaintiff terminated the Defendant. Defendant subsequently commenced employment with Raymond James & Associates ("Raymond James")—a competitor of Plaintiff. Plaintiff alleges that the Defendant has been using customer lists Defendant acquired while employed by Plaintiff to solicit Plaintiff's customers over to Raymond James. Plaintiff requests that the Court enjoin Defendant's conduct because it violates his Account Agreement.

In order to secure injunctive relief the Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm; (3) greater harm to the Plaintiff than to the Defendant; and (4) promotion of the public interest. *All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989). No one element is controlling; instead, the Court must balance each factor in light of the circumstances. *Florida Medical Ass'n Inc. v. U.S. Dept. of Health, Ed. and Welfare*, 601 F.2d 199 (5th Cir.1979).

The Court finds that the Plaintiff has established a substantial likelihood of success on the merits. The Account Agreement requires Defendant to return all original Merrill Lynch records and purge all copies of those records in his possession when he ceases working for Plaintiff. The agreement also prohibits the Defendant from soliciting any clients he serviced while working for Plaintiff.

■ Despite the Account Agreement's clear language, the Defendant retained a home database containing the names and financial information of Plaintiff's clients after he left Plaintiff's employ. Defendant subsequently provided this information to Raymond James. Defendant and Raymond James then solicited virtually all of the approximately three hundred clients Defendant had serviced while employed by Plaintiff. A number of these clients have already transferred their Merrill Lynch accounts to, or opened new accounts with, Raymond James and conducted transactions through Raymond James. These actions unquestionably violate the Account Agreement.

Defendant, relying on *Hapney v. Central Garage, Inc.*, 579 So.2d 127 (Fla. 2nd Dist.Ct.App.1991), argues that the Account Agreement is unenforceable because it does not protect a "legitimate business interest."[2] In *Hapney*, the court held that under § 542.12 Fla.Stat., now § 542.33, an enforceable non-competition agreement "must relate to a legitimate business interest of the employer in order to restrict or impinge upon the right to pursue and earn a living guaranteed by our constitution." *Id.* at 131. The Court then listed three categories of recognized interests: (1) trade secrets and confidential business lists; (2) customer goodwill; and (3) extraordinary or specialized training provided by the employer. Applying these criteria, the Court finds that the Account Agreement protects a legitimate business interest held by the Plaintiff.

Defendant argues that Plaintiff has no legitimate business interest in the customer lists because the Defendant compiled the

---

**2.** Defendant does not contend that the Agreement is invalid on its face, *see e.g. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham,* 658 F.2d 1098 (5th Cir.1981), and thus the Court need not address that issue.

entire client list on his own time and at his own expense. The facts, however, belie Defendant's position. Although the Defendant testified that he researched potential clients himself, he also testified that he used Plaintiff's facilities to solicit and service those customers. Specifically, Defendant used Plaintiff's phones, postage, promotional literature, name and reputation when communicating with prospective and current clients; and used Plaintiff's full service facilities to open client accounts, effectuate transactions, and service clients generally. Indeed, Defendant testified that he solicited 80% of his clients at Plaintiff's office and that Plaintiff's reputation was an important part of his sales pitch. Most important, Defendant conceded that he could not have carried on this business without the Plaintiff because he did not have the necessary resources to solicit and service these accounts. The Court finds that Plaintiff has a legitimate business interest in the customer list based on its substantial, indeed essential, contribution to the list's development.

Regardless of who compiled the customer list, however, it is clearly protected under *Hapney*. The *Hapney* court's ultimate holding was that *"trade secrets, customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interests* subject to protection; [and] other business interests, such as, extraordinary training or education, may constitute predictable interests depending on the proof adduced." *Id.* at 134 (emphasis added). Florida Statute § 812.081 defines trade secret as

> any ... *list of customers* ... which is secret; of value; for use or in use by the business; and of advantage to the business, or providing an opportunity to obtain an advantage over those who do not know how to use it, *when the owner takes measures to prevent it from becoming available to persons other than those selected by the owner* to have access thereto for a limited purpose.

§ 812.081 Fla.Stat. (emphasis added). The Defendant conceded on cross-examination that the customer list is comprised of Plaintiff's customers. Considering the measures Plaintiff took to ensure the list's confidentiality, *see* Affidavit of Aleks Acimovic, the Court finds that the list is a trade secret as defined in § 812.081. Accordingly, Plaintiff has a legitimate business interest in the list because it is a trade secret.

Plaintiff, however, would have a legitimate business interest in the customer list even if it were not a trade secret. The *Hapney* court explicitly held that "customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interest." *Hapney*, at 134. There is no doubt that the subject of this dispute is a customer list and that the list contains Plaintiff's existing customers. Moreover, Plaintiff is clearly attempting to "prevent direct solicitation of existing customers." Thus, under *Hapney* the Plaintiff has a per se legitimate, indeed substantial, business interest in the customer list.

Having determined that the Plaintiff has a legitimate business interest in the list, the Court must find that the Account Agreement is valid. The Court also finds that the Defendant has admittedly violated the agreement and that, therefore, the Plaintiff is likely to succeed on the merits. The Court must next determine whether the Plaintiff will suffer irreparable harm if the motion is not granted.

Section 542.33 of the Florida Statutes provides that the "use of specific trade secrets, customer lists or direct solicitation of existing customers shall be presumed to be irreparable injury and may be specifically enjoined." The Court has already determined that Defendant's conduct implicates all three of these criteria. Accordingly, the burden shifts to the Defendant to overcome the presumption that his conduct will irreparably harm the Plaintiff.

■ Defendant's primary argument against irreparable harm is that Plaintiff's damages are ascertainable and thus subject to a final monetary judgement. In support

of this proposition the Defendant cites *Merrill Lynch, Pierce, Fenner & Smith v. de Liniere*, 572 F.Supp. 246 (N.D.Ga.1983) and *Merrill Lynch, Pierce, Fenner & Smith Inc. v. E.F. Hutton & Co., Inc.*, 403 F.Supp. 336 (E.D.Mich.1975). The Court finds these cases unpersuasive for basically two reasons. First, the Court notes that neither case involved a statutory presumption of irreparable harm. Indeed, the Court in *E.F. Hutton* based its finding on the *Plaintiff's* failure to meet its burden of proof. *E.F. Hutton* at 343–44. Second, the Court simply disagrees that Plaintiff's damages can be determined with "a sufficient degree of certainty." *Id.* at 343.

■ Florida courts have repeatedly held that injunctive relief is appropriate where customer lists are involved. In *Carnahan v. Alexander Proudfoot Co*, 581 So.2d 184 (Fla. 4th Dist.Ct.App.1991), the court found that even if irreparable injury *was not presumed*, copying computer disks and soliciting clients would cause irreparable harm. Under the current facts and statute, however, irreparable injury actually is presumed. Moreover, the Florida Supreme Court has held repeatedly that where a Defendant has breached a covenant not to compete "[t]he Court may award damages ... but the normal remedy is to grant an injunction. This is so because of the inherently difficult task of determining just what damage is actually caused by the employee's breach of the agreement." *Miller Mechanical, Inc. v. Ruth*, 300 So.2d 11 (Fla.1974). In *Capraro v. Lanier Business Products, Inc.*, 466 So.2d 212 (Fla. 1985), the Florida Supreme Court reiterated that an injunction, not monetary damages, was the proper remedy for a breach of a non-competition agreement. Addressing irreparable injury the Court also held that

> [t]o require that a plaintiff prove irreparable injury ... would, in most instances, defeat the purpose of the plaintiff's action. Immediate injunctive relief is the essence of such suits and often times the only effectual relief. It truly can be said in this type of litigation that relief delayed is relief denied.

*Id.* at 213.

Florida law, therefore, recognizes that monetary damages are generally an inadequate remedy where an employee breaches a non-competition agreement. Defendant's position does not undermine Florida's statutory and precedent presumption of irreparable harm.

Defendant's position incorrectly presumes that Raymond James' commissions are a reliable measure of Merrill Lynch's damages. Defendant's expert conceded, however, that when a broker solicits clients away from a former employer the clients sometimes choose not to do business with either party. Moreover, the Defendant testified that Merrill Lynch's reputation, services and products were essential element's of his business success. While the evidence also indicated that Merrill Lynch's reputation, services and products were among the best in the industry, there was no comparable evidence of Raymond James' reputation, services or products. Regardless, these qualities will undoubtably differ in some respects, and these differences undoubtably will impact Defendant's future success. Moreover, some clients undoubtably will be lost entirely. Consequently, the Court finds that Defendant has not establish that Raymond James' commissions are a reliable measure of Merrill Lynch's damages.

Even if Raymond James' commissions were an appropriate measure of damages, there is no way to adequately determine that amount with a "sufficient degree of certainty." Defendant initially maintained that Plaintiff's damages would be limited to one year, and conceded that "[c]alculating damages ... for a ten year period [would be] a much more onerous task." *See* Defendant's Response Memorandum in Opposition to Preliminary Injunction at 3 n. 2. This position presumes that Plaintiff is not entitled to damages for business Defendant solicits after one year because Defendant would be able to recapture these clients after the non-competition clause expired. Defendant, however, testified that he would be unable to solicit these clients in a year if he complied with the terms of the agreement. Because Defendant would be unable to successfully lure Plaintiff's current clients away if he complies with the agreement, the damages for breaching the

agreement must extend for the entire period Defendant services those clients.

Apparently realizing this, Defendant attempted to show at the hearing that damages over an extended period easily could be calculated. First, Defendant's expert testified that there is approximately a 20% annual client turnover in the industry. Second, the expert testified that he could calculate damages over an extended period of time because every transaction is recorded. On cross-examination, however, the witness conceded that some clients will remain with a firm for decades. He also conceded that he could not reliably calculate Plaintiff's damages until the account was closed. This opinion is supported by testimony from Plaintiff's witness, Aleks Acimovic, who testified that an account's current business activity is not necessarily representative of its future activity. Therefore, according to Defendant's own witness, approximately 20% of Plaintiff's damages could not be determined for five years and damages for certain accounts might not be ascertainable for decades.

In addition to lost profits from its present accounts, Plaintiff also alleges that it will lose business its current clients would refer to it in the future. In response, Defendant again argues that these damages can be determined because every account's source and activity is recorded. The derivative nature of these damages only compounds the difficulties in calculating damages previously discussed. For instance, would Merrill Lynch be entitled to all the profits from new accounts or only the portion equal to its contribution in developing that account? More important, the *Defendant* is solely responsible for identifying referred accounts. Thus, there is no objectively reliable mechanism for determining which of Defendant's future accounts are derived from Plaintiff's current accounts. The effectiveness of Plaintiff's remedy should not depend on whether the Defendant truthfully and accurately discloses the source of his future accounts.

For these reasons, the Court finds that Defendant has not overcome the statutory presumption of irreparable injury. Indeed, under these facts no presumption is necessary to find irreparable harm.[3]

█ The Court must next evaluate the balance of harms between the parties. At risk in this suit are 551 accounts, representing approximately $56.4 million of assets and over $653,000 in gross commissions, as well as any future accounts current clients will refer to Plaintiff. As the Court has already explained, these accounts represent a return on a significant investment by Plaintiff. Moreover, the Court has already determined that the injury to Plaintiff will be irreparable. On the other hand, Defendant testified that it will take him seven years to develop a comparable client list. The harm to the Defendant, however, is mitigated by his ability to solicit new clients as well as his present clients' ability to contact him. In addition, the Defendant testified that he will receive twice the commission for new accounts at Raymond James. Finally, the Defendant expressly agreed to be enjoined if he violated the Account Agreement. The Court finds, therefore, that the balance of harms weighs in favor of the Plaintiff.

Finally, the Court finds that an injunction will further the public interest. The injunction only prohibits the Defendant from soliciting clients; it does not preclude the public from contacting the Defendant. Furthermore, Florida's public policy clearly favors protecting Plaintiff's interests. *See, e.g.,* Fla.Stat. §§ 542.33, 608.001, 812.081.

In sum, the Court finds that the Plaintiff has demonstrated a substantial likelihood of success on the merits, as well as, certain and irreparable harm. Balancing these factors with the relative harm to the parties and the public interest it is ORDERED and ADJUDGED that the Plaintiff's Motion for a Preliminary Injunction is GRANTED. The Preliminary injunction shall incorporate the terms of the Temporary Restraining Order issued October 6,

---

**3.** Although the Court finds that Plaintiff has clearly established irreparable harm, it further notes that monetary damages can not compensate Plaintiff for Defendant's unilateral breach of client confidentiality. Nor can monetary damages compensate Plaintiff for the example Defendant's actions set for other Merrill Lynch employees—which will inevitably result in future litigation expenses.

1992. The Preliminary Injunction shall remain in effect pending further Order of this Court or until a decision in arbitration conducted before a duly appointed panel of arbitrators convened in accordance with the Constitution and Rules of the New York Stock Exchange, and hearings otherwise held in accordance with the Constitution and Rules of the New York Stock Exchange.[4] It is further ORDERED and ADJUDGED that all further proceedings are hereby stayed other than to enforce the terms of the Preliminary Injunction.

DONE and ORDERED.

---

**4.** The Defendant's Motion to Compel [expedited] Arbitration and Stay Action is DENIED for the reasons stated in Plaintiff's opposing memorandum.