In re Patrick J. BARRY, Debtor.

John P. BARBEE, Trustee, Plaintiff,

v.

Patrick J. BARRY, Debtor, and Hialeah Miami Springs Medical Fund, a Partnership, Defendants.

Bankruptcy No. 92–11140–BKC–AJC.
Adv. No. 94–0010–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida.

June 17, 1994.

---

Julie W. Allison, Reiser & Allison, P.A., Miami, FL, for Hialeah Miami Springs Medical Fund.

Marte V. Singerman, Tabas, Singerman & Freedman, P.A., Miami, FL, for Patrick J. Barry.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING FINAL SUMMARY JUDGMENT IN FAVOR OF HIALEAH MIAMI SPRINGS MEDICAL FUND (CROSS–PLAINTIFF) AGAINST THE DEBTOR, PATRICK J. BARRY (CROSS–DEFENDANT) AND DENYING CROSS–DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A. JAY CRISTOL, Chief Judge.

THIS MATTER came on before the Court for hearing on June 15, 1994 at 2:30 p.m. on the Motion of Hialeah Miami Springs Medical Fund (the Fund) for entry of a Final Summary Judgment on Count II of its Cross–Claim which is an action for breach of fiduciary duty, or alternatively, on Count III of its Cross–Claim which is a claim for money judgment for monies paid to which the Debtor had no entitlement, and the Motion of Patrick J. Barry (the Debtor) for entry of a Summary Judgment in its favor on the basis that the Cross–Claim does not provide any legal basis for the relief sought. For the reasons expressed below, the Debtor's Motion is denied and the Fund's Motion is granted and a Final Summary Judgment is entered in favor of the Fund and against the Debtor for the sum of Fifty–Seven Thousand Three Hundred Twenty–Three Dollars and 04/100 ($57,323.04) plus interest at the rate of twelve percent (12%) per annum, which shall accrue from the date payment of this sum was made by the Fund to the Trustee.

## FINDINGS OF FACT

The instant Cross–Claim was generated in response to an adversary proceeding filed by the Trustee. The Trustee sued the Fund and the Debtor to recover post-petition monetary distributions paid by the Fund to the Debtor, as these distributions were property of the estate as a matter of law. The Trustee prevailed on its claims and received the payments sought. As a result, the Fund has proceeded on its Cross–Claim against the Debtor in which it seeks to recover the post-petition distribution it paid twice: once to the Debtor and again to the Trustee.

The Fund is a Florida general partnership in which the Debtor was a general partner at the time his petition was filed on or about February 24, 1992. The principle activity of the Fund is to collect monies it receives as payment on a promissory note executed in connection with the sale of a hospital, and then after payment of various fees and expenses, to distribute these monies on a quarterly basis to the general partners, according to their percentage ownership in the Fund. The Debtor owned ninety (90) shares in the Fund and has been receiving distributions based on his interest in the Fund since 1984.

The Debtor listed his interest in the Fund as an asset on his schedule of personal property. However, rather than listing the Fund by its correct name and identifying it as a Florida general partnership, he listed his interest in the Fund as shares in Palmetto General Hospital, which is the hospital sold by the Fund. The Debtor likewise similarly listed shares in Hialeah Hospital as items of personal property held by him, although he subsequently testified that this represents an interest in an entity known as Hialeah Ambulatory in which he owns an interest by virtue of his one hundred percent (100%) interest in another entity known as Norenor Corp. The Debtor explains the inaccurate identification of the foregoing personal property interests on his schedules as being due to the fact that he "is not an expert in these matters."

The Debtor was represented by "experts" at the time he filed his petition: he had competent bankruptcy counsel then and is still so represented.

The Fund received notice of this bankruptcy when it received a letter addressed to it from the Trustee on or about January 5, 1993, some ten (10) months after the petition was filed. The Trustee's letter referred to the Debtor's shares in the Fund, the fact that they were not freely transferable and that it was the Trustee's understanding the shares were redeemable upon request through the office of Frank Todd, a representative of the Fund. Notable by its absence, is the fact that the Trustee's letter does not mention the quarterly distributions generated by the Debtor's shares.

Prior to receipt of this letter and being put on notice of bankruptcy, the Fund paid three (3) post-petition quarterly distributions to the Debtor in the total amount of Thirty–Six Thousand Dollars ($36,000.00). The Fund made distributions in the amount of Fifty–Two Thousand Two Hundred Dollars ($52,-200.00) after knowledge of the Debtor's bankruptcy.

The Fund testified that it continued to make payments to Dr. Barry after it received notice that he was in bankruptcy because it was under the mistaken impression that while it was negotiating with the Trustee to re-purchase the Debtor's shares, if the Fund was not to pay any upcoming distributions to the Debtor, the Trustee would issue specific directions as to whom the distributions should be paid. When the Fund did receive specific instructions from a successor Trustee to make payment to him of a distribution occurring in November of 1993, it paid the bankruptcy Trustee and not the Debtor.

The Debtor testified that he kept the post-petition distributions, although the evidence reflects that the Debtor was not sure whether he was entitled to. Upon receipt of the first post-petition distribution check from the Fund in May of 1992 in the amount of Eleven Thousand Seven Hundred Dollars ($11,-700.00), the Debtor testified that he called the Fund to discuss whether he could keep the money. During this conversation, he expressed his understanding to the Fund that the money did not belong to the bankruptcy estate. The Debtor attempted to explain why three (3) months after his filing, it was now his understanding that the money

belonged to him when he had already listed his interest in the Fund as an asset of the estate and did not schedule it as exempt as follows: that the money was somehow related to his earnings and that he thought the terms of the partnership agreement prohibited the money from being given to anyone outside the partnership such as an ex-wife or bankruptcy Trustee. Therefore, because the money reflected the activity of the doctors practicing at the hospital and could not be paid to anyone outside the partnership, it might as well go to him, rather than the other partners. Notwithstanding this "understanding" the Debtor conceded that the amount of any distributions received from the Fund was dependent in some respects on his ownership interest in the Fund and that the size of the distribution he received in May of 1992 was not a function of the gross dollars he produced for the hospital. The Debtor never sought a legal opinion from anyone with respect to what his obligations were concerning the post-petition dividends to clarify or confirm his "understanding" that the monies did not belong to the bankruptcy estate.

This Court held in its Order dated April 19, 1994, that once the Fund knew of the Debtor's bankruptcy on or after January 5, 1993, there devolved upon it an absolute legal duty to make the payments being distributed by it to the Trustee, notwithstanding any confusion or doubts on the part of the Fund pertaining to the scope of its duty or whom should be paid. The Court noted that the Fund had the ability to retain counsel to inquire as to the scope of its duty if it was in doubt as to whom it should pay and its failure to do so would not be a burden that this Court would place on the creditors of the estate. The Court refused to relieve the Fund of its mistake.

As a result of this Court's Order dated April 19, 1994, the parties have stipulated that the Fund has repaid the monies that it distributed to the Debtor after it had notice of the bankruptcy in the amount of Fifty–Seven Thousand Three Hundred Twenty–Three Dollars and 04/100 ($57,323.04). (This amount includes interest). The Debtor, finally realizing he likewise had an absolute duty to turnover the post-petition distributions to the estate after vigorously defending the Trustee's claim for several months, settled this controversy with the Trustee. As a result of this Court's Order Granting the Trustee's Motion for Approval of Settlement and Compromise of Controversy, the parties have stipulated that the Debtor repaid to the estate the sum of Forty–Three Thousand One Hundred Thirty–Seven Dollars and 76/100 ($43,137.76) which sum represents the principal outstanding balance on the post-petition distributions received by the Debtor, plus interest. The Estate has therefore been made whole as a result of the payments made by the Fund and the Debtor.

## CONCLUSIONS OF LAW

■ Turning now to Count III of the Cross–Claim and the issue of unjust enrichment, it is undisputed that the Fund made double payments and that the amount which the Funds seeks to recover from the Debtor is the amount it was required to pay to the Trustee. It is also undisputed that the Debtor has received a windfall in the amount of Fifty–Seven Thousand Three Hundred Twenty–Three Dollars and 04/100 ($57,323.04) as the Trustee is now barred from recovering this sum from the Debtor.

To paraphrase Judge Upchurch's opinion in *Ferguson v. Cotler,* 382 So.2d 1315 (Fla. 5th D.C.A.1980), legend has it that Abraham Lincoln "while making a purchase, was overpaid a few cents in making change. Upon discovering the error, he immediately walked several miles in the nighttime to return the money to the storekeeper ..." *Id.* at 1315. It is this Court's opinion that the Debtor does not emulate Mr. Lincoln, just as the appellants did not in the *Ferguson* case. Rather, the Debtor seeks to keep the monies mistakenly delivered to him by the Fund, although he is unable to identify a cogent reason of law or fact that would entitle him to do so.

■ This Court finds unpersuasive the arguments of the Debtor that the Fund is somehow barred by the doctrine of unclean hands from recovering the distributions at issue from the Debtor based on the Fund's conduct in dealing with the Trustee. The

Fund's dealings with the Trustee are irrelevant. For the doctrine of unclean hands to apply, the misconduct complained of must be connected to the matter in litigation and concern *the opposite* party. See *Faber v. Landman*, 123 So.2d 405, 407 (Fla.2d D.C.A. 1960). No evidence has been presented to this Court that the Fund acted inequitably or with unclean hands in its post-petition dealings with the Debtor. Equally without merit is the Debtor's argument that the Fund cannot recover on the theory of unjust enrichment because the payments made were "a mistake of law," as the Fund was under no legal duty to pay the Debtor. Its initial payments to the Debtor were a mistake of fact. In any event, this distinction is not crucial as there is law to support the proposition that as far as equity is concerned, where one party has been unjustly enriched, the plaintiff's right to recover rests both on money paid by mistake of fact and by mistake of law. *Sun Coast International, Inc. v. Department of Business Regulation*, 596 So.2d 1118 (Fla. 1st D.C.A.1992), *citing*, 11 Fla. Jur.2d *Contracts* § 236, at 538 (1979).

■ It is apparent from the pleadings, depositions, and matters of record that, if one accepts the Debtor's testimony at face value, at the time the Fund was paying distributions to the Debtor, neither the Fund nor the Debtor was aware that these distributions were in actuality property of the estate.[1] It seems, both parties were mistaken as to this fact. Where both parties "act on a set of facts, both believing them correct, when in fact those facts are incorrect, then both parties are mistaken." *Ferguson v. Cotler*, 382 So.2d at 1316. This mistake of fact resulted in the Fund making double payments. It further resulted in the Debtor obtaining various monies of whose possession he cannot justify and thus resulting in his unjust enrichment. A party who has been unjustly enriched "should be required to compensate the plaintiff" whose right of recovery "rests both on money paid by mistake of fact and by mistake of law." *Sun Coast International, Inc. v. Department of Business Regulation*, 596 So.2d 1118 (Fla. 1st

D.C.A.1992), *citing*, 11 Fla.Jur.2d *contracts* § 236, at 538 (1979). In such a case, where the recipient of the funds "cannot show a legal and equitable ground for retaining" the monies, Florida law is "settled that money paid under a mistake of facts may be so recovered, it being considered unconscionable that money so paid should be detained from the payor on his discovery of the mistake and demand for the money's return." *Anchor Savings Bank v. Berlin*, 445 So.2d 675 (Fla.Dist.1984), *citing, Ferguson, supra.*

In this case, the Debtor has demonstrated no cogent reason why he ought to be permitted to retain the monies mistakenly paid to him. It would be unjust for the Fund to incur a double obligation and the Debtor to receive a windfall. Accordingly, the Court finds that the Fund is entitled to recover on its claim for money judgment against the Debtor for monies paid to which the Debtor had no entitlement.

### CONCLUSION

The Fund's Motion for Final Summary Judgment is granted and the Debtor's Motion for Summary Judgment is denied. Pursuant to Bankruptcy Rule 9021, Judgment shall entered on a separate document.

**DONE AND ORDERED.**

---

1. The Debtor had a corresponding legal duty to that of the Fund under § 542(a) and an additional legal duty under § 521(4) to surrender this property of the estate to the Trustee.