MERRILL LYNCH, PIERCE,
FENNER & SMITH,
INC., Plaintiff,

v.

Keith D. DUNN, et al., Defendants.

No. 8:02CV428.

United States District Court,
M.D. Florida,
Tampa Division.

March 18, 2002.

Joseph A. Dougherty, Paul G. Kirk, Rubin & Associates, P.C., Paoli, PA, Robert R. Hearn, Zuckerman Spaeder, L.L.P., Tampa, for Merrill Lynch, Pierce, Fenner & Smith, Inc., plaintiffs.

Glenn D. Kelley, Lonnie Kay Martens, Kelley & Warren, P.A., West Palm Beach, for Keith D. Dunn, Richard W. Janaes, Daniel C. Petika, Mark A. Theriault, defendants.

## ORDER

BUCKLEW, District Judge.

This cause comes before the Court on (1) Plaintiff's Motion for a Preliminary Injunction (Doc. No. 2–2), which Defendants oppose (Doc. No. 8), and (2) Defendants' Motion to Vacate or Modify the Temporary Restraining Order (Doc. No. 15), which Plaintiff opposes (Doc. No. 17).

## I. Background

On March 4, 2002, Plaintiff filed an emergency motion for a temporary restraining order. (Doc. No. 2–1). On March 5, 2002, the Court granted the motion and issued a temporary restraining order against all four defendants. (Doc. No. 7). On March 12, 2002, this Court held a hearing on the instant motions for a preliminary injunction and to vacate the temporary restraining order.

At the hearing, the parties stipulated to the following facts: Plaintiff is a securities brokerage firm, and Defendants are financial advisors that were formerly employed by Plaintiff. Defendants Dunn, Janaes, and Petika each signed employment contracts with Plaintiff, in which each defendant agreed (1) that all of Plaintiff's records, including all of the customer information contained therein, are Plaintiff's exclusive property; (2) that they would not remove, copy, or transmit Plaintiff records, or the information con-

tained therein, except in the ordinary course of conducting business for Plaintiff; and (3) that upon termination of their employment with Plaintiff, they agreed that for one year following their termination, they would not solicit any of Plaintiff's customers whose names they learned while employed by Plaintiff. (Doc. No. 1, Ex. A, B, C). Additionally, Defendants Petika and Janaes agreed that if they violated the above described provisions, they consented to the issuance of a preliminary injunction to enforce the provisions and maintain the status quo pending arbitration. (Doc. No. 1, Ex. B, C).

Defendant Dunn's employment contract differs from Defendant Petika and Janaes' employment contracts in three ways. First, Defendant Dunn's employment contract is governed by the laws of New York.[1] (Doc. No. 1, Ex. A). Second, Defendant Dunn's contract states that all disputes shall be settled by arbitration. *Id.* Third, Defendant Dunn's contract is silent on the topic of the issuance of an injunction in order to maintain the status quo pending arbitration. *Id.*

Unlike Defendants Dunn, Petika, and Janaes, Defendant Theriault did not sign an employment contract that contained the above described non-solicitation and non-disclosure agreements. However, Defendant Theriault did sign and accept the obligation to follow Plaintiff's "Guidelines for Business Conduct," which provides that Plaintiff's assets include its customer lists and information, and that he will not use Plaintiff's customer lists and information for his own personal benefit without Plaintiff's permission. (Doc. No. 1, Ex. F). Additionally, Defendant Theriault signed and agreed to abide by Plaintiff's "Conflict

of Interest" agreement, which provides that he would not use or disclose any of Plaintiff's confidential information. *Id.* Defendant Theriault also signed and agreed to adhere to Plaintiff's "Information Security Policy," which provides that he is obligated to safeguard Plaintiff's information and is prohibited from disclosing such information or using Plaintiff's computer facilities in an unauthorized manner. *Id.*

Defendants worked for Plaintiff at Plaintiff's New Port Richey office. Plaintiff, however, decided to consolidate its New Port Richey office with its Clearwater office, and Defendants were asked to relocate to Plaintiff's Clearwater office. Plaintiff intended to maintain a presence in New Port Richey, and therefore, it decided to keep a scaled-down version of the New Port Richey office so that Plaintiff's financial advisors could meet with their New Port Richey customers at that location.

On Friday, March 1, 2002, Defendants resigned from their employment with Plaintiff and joined a competing firm, Salomon Smith Barney, Inc. Prior to their resignations, each defendant used Plaintiff's computers and printed out confidential customer information. Defendants removed this information from Plaintiff's office and sent it to a third party who used the information to create solicitation letters.[2] Immediately after Defendants resigned, the solicitation letters were mailed to Plaintiff's customers. The solicitation letters encouraged Plaintiff's customers to transfer their business to Salomon Smith Barney, and the letters contained account transfer forms to facilitate the transfer of the customers' accounts.

---

1. Defendants Petika and Janaes' contracts are governed by Florida law. (Doc. No. 1, Ex. B, C).

2. Copies of the solicitation letters sent by Defendants are attached at exhibit A to document 16.

Additionally, after Defendants resigned, they used Plaintiff's confidential customer information to telephone Plaintiff's customers and encourage them to transfer their accounts to Salomon Smith Barney. (Doc. No. 5). Defendants also arranged some personal meetings with Plaintiff's customers after their resignations.

In response, on March 4, 2002, Plaintiff filed suit against Defendants and sought a temporary restraining order and a preliminary injunction. For the reasons discussed below, the Court grants Plaintiff's motion for a preliminary injunction.

## II.  Standard of Review

■ This Court may issue an injunction if Plaintiff shows (1) a substantial likelihood of success on the merits; (2) that Plaintiff will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to Plaintiff outweighs the potential damage that the proposed injunction may cause Defendants; and (4) that the injunction will not be adverse to the public interest. *See All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.,* 887 F.2d 1535, 1537 (11th Cir. 1989) (citation omitted).

## III.  Authority of the Court to Issue an Injunction

■ This Court has the authority to issue injunctive relief despite the parties' agreements to arbitrate their disputes. As to Defendant Petika, his agreement specifies that this Court has the authority to issue an injunction if the Court determines that Plaintiff is entitled to one. *See American Express Financial Advisors, Inc. v. Makarewicz,* 122 F.3d 936 (11th Cir.1997), *cert. denied,* 523 U.S. 1022, 118 S.Ct. 1303, 140 L.Ed.2d 469 (1998)(finding that a similar clause gave the district court the au-

thority to determine whether the plaintiff was entitled to injunctive relief, despite the fact that the parties may have been required to resolve their dispute through arbitration). Defendant Janaes' agreement also contains his consent to the issuance of an injunction to maintain the status quo pending arbitration.

As to Defendant Dunn, even though his agreement specifies that all disputes shall be settled by arbitration, this Court has the authority to issue an injunction pending arbitration in order preserve the status quo and to ensure that the parties get a meaningful arbitration of their dispute. *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1053–54 (2d Cir.1990)(noting that "[a]rbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision") (citations omitted); *Roso–Lino Beverage Distributors, Inc. v. Coca–Cola Bottling Co. of New York, Inc.,* 749 F.2d 124 (2d Cir.1984). Additionally, Rule 10335 of the NASD's (National Association of Securities Dealers) arbitration rules specify that parties may seek injunctive relief within the arbitration process or from a court of competent jurisdiction.[3] (Doc. No. 8, Ex. A).

■ As to Defendant Theriault, while he did not sign an employment agreement containing non-solicitation and non-disclosure provisions, such is not dispositive on the issue of the Court's authority to issue an injunction. *See Unistar Corporation v. Child,* 415 So.2d 733, 734–35 (Fla. 3d DCA 1982). "The law will import into every contract of employment a prohibition against the use of a trade secret by the employee for his own benefit, to the detriment of his employer, if the secret was

---

**3.** While Defendant Dunn's agreement specifies that all disputes shall be settled in arbitration in accordance with the rules of the New York Stock Exchange, the parties agreed at the hearing that the dispute would be submitted to the NASD instead.

acquired by the employee in the course of his employment." *Id.* at 734 (citation omitted). Other courts have held that Plaintiff's customer lists and the information contained therein are trade secrets under Florida law. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lovekamp,* No. 4:01CV318SPM, 2001 WL 810749, at *3 (N.D.Fla. July 16, 2001); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty,* 808 F.Supp. 1555, 1558 (S.D.Fla.1992), *aff'd,* 2 F.3d 405 (11th Cir. 1993). Likewise, this Court finds that Plaintiff's customer lists and the information contained therein are trade secrets, since the Court finds that Plaintiff has shown that it has taken reasonable efforts to maintain their secrecy and that they give Plaintiff an advantage over those who do not know of their contents or are unable to use them. (Doc. No. 5, p. 7–10).

Accordingly, the Court finds that it has the authority to issue a preliminary injunction to maintain the status quo if Plaintiff establishes all four requirements necessary for the issuance of an injunction. For the reasons discussed below, the Court finds that Plaintiff has established that it is entitled to a preliminary injunction against all four defendants.

## IV. Analysis of Plaintiff's Entitlement to a Preliminary Injunction

Plaintiff must show that it meets the four requirements described above before a court may issue an injunction. Accordingly, the Court will analyze each requirement.

### A. Likelihood of Success

■ The first element to be considered is whether Plaintiff has demonstrated a substantial likelihood that it will prevail on the merits of its claims. Based on the evidence and arguments presented to the Court, the Court finds that Plaintiff has met this burden.

Specifically, Plaintiff has shown that Defendants Dunn, Janaes, and Petika each signed non-solicitation and non-disclosure agreements. Additionally, the Court finds that the non-solicitation and non-disclosure agreements were reasonably necessary to protect Plaintiff's legitimate business interest in its confidential customer lists and the information contained therein, which the Court has previously deemed to be trade secrets. Furthermore, the Court finds that the duration of the restrictions (one year) is reasonable.

Plaintiff has also shown that Defendants Dunn, Janaes, and Petika disclosed Plaintiff's confidential information to a third party and used such information to solicit Plaintiff's customers by mail, telephone, and personal meetings. These three defendants' conduct was in direct violation of their agreements with Plaintiff not to solicit Plaintiff's customers for one year and not to disclose Plaintiff's confidential customer information, and therefore, the Court finds that Plaintiff will likely succeed on its claims against these three defendants.

■ Additionally, Plaintiff has shown that its customer lists and the information contained therein are trade secrets and that all four of the defendants disclosed this information to a third party and that Defendants used Plaintiff's confidential customer information to solicit customers for Salomon Smith Barney. Therefore, even though Defendant Theriault did not sign an employment agreement containing a non-disclosure and non-solicitation agreement, the law implies the obligation that he not use Plaintiff's trade secrets for his own benefit to Plaintiff's detriment. Furthermore, Defendant Theriault signed various documents in which he agreed not to disclose Plaintiff's confidential customer information. Based on the above, the Court finds that Plaintiff will likely suc-

ceed on its claims against Defendant Theriault.

■ Defendants, however, contend that Plaintiff will not succeed on the merits, because they claim that they created the customer information that they used and disclosed. Specifically, Defendants argue that they developed their own client lists on an ACT database, which the parties characterize as an enhanced electronic rolodex. The ACT database consists of software that Defendants purchased and placed on their personal computers. Defendants did not simply download Plaintiff's customer information into their ACT databases, but instead, they had to type the information in themselves. Defendants argue that because they bought the software and typed the information into the database themselves, they have "developed" the customer lists and information contained in their ACT databases.

In support of this contention, Defendants cite *Sethscot Collection, Inc. v. Drbul,* 669 So.2d 1076 (Fla. 3d DCA 1996). In *Sethscot,* the plaintiffs sought an injunction to prohibit the defendant from using their prospective and active customer lists. *See id.* at 1077–78. The *Sethscot* court enjoined the defendant from using the plaintiff's active customer list, but the court did not prohibit the defendant from using customer lists that the defendant developed himself. *See id.* at 1078. The *Sethscot* court, however, did not explain what efforts by the defendant would justify a conclusion that he developed the customer list himself.

This Court rejects the argument that Defendants can buy software, install it on their computers, and then input Plaintiff's confidential customer information (which this Court has deemed to be trade secrets) into their computers and that such efforts justify the conclusion that Defendants developed the information contained in their ACT databases themselves. This Court

finds that developing a customer list requires something more than retyping an already created list when the information being copied is not readily available from a public source.

■ Additionally, Defendant Dunn argues that Plaintiff will not likely succeed on the merits of its claims, because New York law (which governs his employment agreement) does not support the relief requested by Plaintiff. To support this contention, Defendant Dunn cites *BDO v. Hirshberg,* 93 N.Y.2d 382, 690 N.Y.S.2d 854, 712 N.E.2d 1220 (1999).

In *BDO,* the court analyzed whether an agreement similar to a covenant-not-to-compete with the plaintiff's clients for eighteen months after the defendant terminated his employment was enforceable. *See id.* at 387–88, 690 N.Y.S.2d 854, 712 N.E.2d 1220. In analyzing the enforceability of the agreement, the *BDO* court stated that "[a] restraint is reasonable only if it: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *Id.* at 388–89, 690 N.Y.S.2d 854, 712 N.E.2d 1220 (emphasis in original) (citations omitted). The *BDO* court found that the plaintiff (an accounting firm) had a legitimate interest in protecting against the defendant's competitive use of client relationships that the plaintiff enabled him to acquire through his performance of accounting services for the plaintiff's clients during the course of his employment. *See id.* at 392, 690 N.Y.S.2d 854, 712 N.E.2d 1220.

The *BDO* court concluded that extending the restrictive covenant to prohibit the defendant from competing with the plaintiff's clients with whom he did not develop relationships with through his performance of accounting services during the course of his employment would constitute an unrea-

sonable restraint, because the restraint would be greater than necessary to protect the plaintiff's legitimate interests. *See id.* However, the *BDO* court noted that had the plaintiff submitted any evidence that the defendant "used confidential firm information to attract [the plaintiff's] clients with whom he had not had a relationship while employed there[,]" the court might have reached a different conclusion. *Id.* at 392 n. 2, 690 N.Y.S.2d 854, 712 N.E.2d 1220.

Additionally, the *BDO* court stated:

[I]t would be unreasonable to extend the covenant to personal clients of defendant who came to the firm solely to avail themselves of his services and only as a result of his own independent recruitment efforts, which [the plaintiff] neither subsidized nor otherwise financially supported as a part of a program of client development. Because the goodwill of those clients was not acquired through the expenditure of [the plaintiff's] resources, the [plaintiff] has no legitimate interest in preventing defendant from competing for their patronage.

*Id.* at 393, 690 N.Y.S.2d 854, 712 N.E.2d 1220.

Defendant Dunn relies on the above quoted language in *BDO* to support his contention that this Court should not enforce his non-solicitation agreement. However, no evidence has been presented that Defendant Dunn obtained any of his clients solely as a result of his own independent recruitment efforts, which Plain-

tiff neither subsidized nor otherwise financially supported as a part of a program of client development. Additionally, the facts in *BDO* are further distinguishable, because there was no evidence that the defendant in *BDO* used the plaintiff's confidential information. *See id.* at 391, 690 N.Y.S.2d 854, 712 N.E.2d 1220. However, in the instant case, the Court has already found that Defendant Dunn used Plaintiff's confidential customer information to solicit Plaintiff's clients. Therefore, the Court finds that Defendant Dunn's reliance on *BDO* is misplaced.

■ This Court notes that under New York law, a covenant-not-to-compete that is reasonable in time and geographic scope will be enforced "to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, [and] (2) to prevent an employee's release of confidential information regarding the employer's customers." *Ticor Title Insurance Co. v. Cohen,* 173 F.3d 63, 70 (2d Cir.1999). This Court concludes that Defendant Dunn's agreement is reasonable in time[4] and scope[5] and that it is necessary to prevent the disclosure of Plaintiff's confidential customer information. Accordingly, the Court finds that Defendant Dunn's non-disclosure and non-solicitation agreement is enforceable under New York law.

Based on the above, the Court concludes that Defendants' arguments—that they developed the customer lists contained in their ACT databases and that New York

---

**4.** This Court finds that the non-disclosure and non-solicitation period is reasonable, since it only lasts for one year. *See Ecolab, Inc. v. Laundry,* 656 F.Supp. 894, 898 (S.D.N.Y. 1987).

**5.** This Court rejects Defendant Dunn's argument that the geographic scope of the non-disclosure and non-solicitation agreement is unreasonable because Plaintiff no longer has a legitimate business interest in New Port

Richey due to its closing its New Port Richey office. Plaintiff has stated that it intends to maintain a presence in New Port Richey and that it will keep a scaled-down version of the New Port Richey office open in order to accomplish this. Therefore, the Court finds that the geographic scope is reasonable, since Plaintiff will continue to have a legitimate business interest in its New Port Richey customers.

law does not support the requested relief—have no merit. Accordingly, the Court finds that Plaintiff has shown that it will likely succeed on the merits of its claims.

### B. Irreparable Harm

■ The next element that the Court must analyze is whether Plaintiff will be irreparably harmed if the Court does not issue the injunction. Under Florida Statute §§ 542.33(2)(a), Plaintiff is presumed to suffer irreparable harm by Defendants Janaes and Petika's use of Plaintiff's customer lists and solicitation of Plaintiff's customers. *See also Capraro v. Lanier Business*, 466 So.2d 212, 213 (Fla.1985). However, even without this presumption, and as to all Defendants, the Court finds that Plaintiff will be irreparably harmed if the injunction is not issued, because Plaintiff's damages are difficult to measure with reasonable certainty. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham*, 658 F.2d 1098, 1102 n. 8 (5th Cir.1981); *Lovekamp*, 2001 WL 810749, at *4; *Hagerty*, 808 F.Supp. at 1559–60; *Ecolab, Inc. v. Laundry*, 656 F.Supp. 894, 899–900 (S.D.N.Y.1987) (citation omitted). Therefore, the Court finds that an injunction is the only effective relief available to Plaintiff. *See Capraro*, 466 So.2d at 213; *Hagerty*, 808 F.Supp. at 1559.

### C. Balance of Harms

■ Next, the Court must compare the harm to the parties caused by the issuance or non-issuance of an injunction. As discussed above, the Court finds that Plaintiff will be irreparably harmed if an injunction is not issued. The harm to Defendants, on the other hand, is not as great, especially given the fact that (1) Defendants Dunn, Janaes, and Petika entered into valid agreements prohibiting the conduct Plaintiff seeks to enjoin, (2) Defendant Theriault signed various agreements not to disclose Plaintiff's confiden-

tial customer information; and (3) Defendant Theriault is prohibited under Florida law from using Plaintiff's trade secrets for his own benefit to Plaintiff's detriment. Additionally, the Court notes that none of the defendants are prohibited from competing with Plaintiff for new customers; instead, Defendants are just prohibited from using or disclosing Plaintiff's confidential customer information and soliciting Plaintiff's customers. Accordingly, the Court finds that the balance of harms weighs in Plaintiff's favor.

### D. Public Interest

■ Next, the Court must analyze the effect of the injunction on the public's interest. Defendants argue that issuing the injunction would be against public policy. To support this contention, Defendants cite the NASD's "Interfering With Customer Account Transfers" rule. (attached at Doc. No. 8, Ex. I). In this rule, the NASD states that it "believes that obtaining court orders to prevent customers from following a registered representative to a different firm" is an unfair practice. *Id.* The NASD has also stated that it believes that customers should be able to choose the registered representatives and the firms who service their accounts. (Doc. No. 8, Ex. G).

While the Court agrees that the public should have the freedom to choose who services their accounts, the Court finds that Plaintiff's requested injunctive relief does not affect the public's right to choose. Instead, the requested injunctive relief merely prohibits Defendants from using or disclosing Plaintiff's confidential customer information or soliciting Plaintiff's customers and encouraging them to transfer their accounts; it does not prohibit Defendants from servicing Plaintiff's former customers who choose to transfer their accounts to Salomon Smith Barney. Furthermore, the

Court notes that the NASD rule that Defendants rely on states that it does not affect the ability of firms to use employment agreements to prevent former employees from soliciting firm customers. Accordingly, the Court finds that issuing an injunction will not be adverse to the public's interest.

### E. Unclean Hands

■ Defendants final argument[6] is that Plaintiff is not entitled to injunctive relief because it is guilty of unclean hands. Specifically, Defendants contend that Plaintiff encourages its employees to help it recruit its competitors' financial advisors in order to obtain their customer lists.

■ In order for Defendants to successfully assert the doctrine of unclean hands, Defendants must demonstrate two things: (1) that Plaintiff's wrongdoing concerned the Defendants and is directly related to the matter in the litigation; and (2) that Defendants were personally injured by Plaintiff's conduct. *See Calloway v. Partners National Health Plans*, 986 F.2d 446, 450–51 (11th Cir.1993) (citations omitted); *In re Barry*, 170 B.R. 179, 183 (Bankr.S.D.Fla.1994), *aff'd*, 184 B.R. 611 (S.D.Fla.1995) (citation omitted). Defendants, however, cannot satisfy either requirement, since the conduct complained of does not relate to the matter in litigation, nor have Defendants shown that they were injured by the alleged conduct. Therefore, the Court rejects Defendants' argument that Plaintiff is not entitled to injunctive relief because it is guilty of unclean hands.

### V. Conclusion

Based on the above, this Court finds that Plaintiff has satisfied all four requirements for the issuance of a preliminary injunction. Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion for a Preliminary Injunction (Doc. No. 2–2) is **GRANTED**; and

(2) Defendants' Motion to Vacate or Modify the Temporary Restraining Order (Doc. No. 15) is **DENIED AS MOOT**.

### PRELIMINARY INJUNCTION ORDER

AND NOW, after consideration of all the arguments and evidence presented by counsel for the parties, and the submissions of record, it is hereby ORDERED AND DECREED that:

1. The security in the amount of $25,000 posted by Merrill Lynch in accordance with the Temporary Restraining Order dated March 5, 2002 shall remain in full force and effect.

2. Defendants Keith D. Dunn, Richard W. Janaes, Daniel C. Petika and Mark A. Theriault be enjoined and restrained, directly or indirectly, and whether alone on in concert with others, including any officer, agent, representative, and/or employee of Defendants' new employer, Salomon Smith Barney, Inc., from:

a) soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whom Defendants served or whose name became known to Defendants while in the employ of Merrill Lynch for the purpose

---

6. The Court rejects without discussion Defendants' arguments that (1) the Court cannot issue an injunction against Defendant Dunn because damages are adequate, since his employment agreement specifies that he will be liable for damages caused by a violation of his non-disclosure and non-solicitation agreement; and (2) Plaintiff cannot enforce the non-disclosure and non-solicitation agreement against Defendants, because it chose to close its New Port Richey office.

of inviting, encouraging or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Defendants' immediate family and relatives, any customers serviced by Janaes who reside outside of the State of Florida, and any customers serviced by Theriault as a Series 7 registered representative prior to his employment at Merrill Lynch);

b) using, disclosing, or transmitting for any purpose, including solicitation of said customers, the information contained in the records of Merrill Lynch, or, soliciting or initiating contact with any client whose records or information Defendants used in violation of paragraph 1 of their Employment Agreements. This specifically includes any client whom Defendants may have contacted by mail, phone or otherwise through the use of any client phone numbers or other information obtained by Defendants while in the employ of Merrill Lynch (excluding members of Defendants' family and relatives and any customers serviced by Theriault as a Series 7 registered representative prior to his employment at Merrill Lynch); and

c) using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch or concerning its customers, including, but not limited to, the names, addresses, and financial information of said clients.

3. Defendants, and anyone acting in concert or participation with Defendants, including Defendants' counsel or any agent, employee, officer or representative of Smith Barney are further ordered to return to Merrill Lynch's New Port Richey office any and all original records and other documents or recordings containing customer names, addresses or other account-related information, together with all copies and/or other reproductions thereof, in whatever form, and to otherwise purge any and all such information from their possession, custody, or control within twenty-four (24) hours of notice to Defendants or their counsel of the terms of this Order, provided, however that any information so purged shall be printed prior to purging and the sole copy shall be returned to Merrill Lynch pursuant to this paragraph.

4. The Court's Order shall remain in full force and effect until such time as the Arbitration Panel has an opportunity to review the terms herein. The Arbitration Panel may review, alter, extend the scope of, or dissolve this injunction.